FILED

VANESSA L. ARMSTRONG, CLERK

JAN - 8 2020

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE
### DIVISION

| | | |
|---|---|---|
| **MARY EITEL** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.** |
| | § | |
| **PNC BANK, N.A. D/B/A AND F/K/A** | § | 3:20-cv- 12 - DJH |
| **FIRST KENTUCKY TRUST, WELLS** | § | |
| **FARGO & COMPANY, WACHOVIA** | § | |
| **BANK, N.A., FIRST UNION CORP,** | § | |
| **SOUTH STATE BANK, SAVANNAH** | § | |
| **BANK AND TRUST, WILEY ELLIS** | § | |
| **INDIVIDUALLY AND ON BEHALF OF** | | |
| **ELLIS, PAINTER, RATTEREE &** | | |
| **ADAMS, LLP, WILEY ELLIS** | | |
| **INDIVIDUALLY AND ON BEHALF OF** | | |
| **SAVANNAH BANK AND TRUST,** | | |
| **MICHAEL E. COFIELD,** | | |
| **INDIVIDUALLY AND ON BEHALF OF** | | |
| **BIRD, COFIELD, MOISE, LLC, THE** | | |
| **ESTATE OF PAUL T. EITEL, JR., AND** | | |
| **MARILYN CASEY EITEL** | | |

**DEFENDANTS**

## COMPLAINT

Mary Eitel ("**Plaintiff**"), in support of her Complaint against Defendants, states as follows:

1.      This is an action under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("**RICO**"), and under Kentucky state law claims for fraud, breach of fiduciary duty, civil conspiracy, tortious interference with an inheritance, negligence, gross negligence, and professional malpractice, related to the actions permitted to be taken by Paul T. Eitel, Jr. ("**Junior**"), Plaintiff's father, in the care and protection of the generation-skipping trusts

established by Plaintiff's grandparents, Paul T. Eitel, Sr. ("**Senior**") and Berenice L. Eitel ("**Berenice**") (collectively, "**Grandparents**"), including the Paul T. Eitel Trust Under Will ("**Senior's Trust Under Will**") and the Paul T. Eitel Trust Under Agreement ("**Senior's Trust Under Agreement**") (collectively, "**Senior's Trusts**"), created by the Last Will and Testament of Paul T. Eitel ("**Senior's Will**"), and the Berenice L. Eitel Trust Under Will ("**Berenice's Trust**") created by the Last Will and Testament of Berenice L. Eitel ("**Berenice's Will**"). Senior's Will and Berenice's Will (collectively, the "**Grandparents' Wills**"), which created Senior's Trusts and Bernice's Trust became the Trust at issue in this complaint ("**Issue Trust**"). Under the Issue Trust, Junior and his sister, Helen Rollins ("**Rollins**") were the named income beneficiaries to the Issue Trust, with Junior and Rollins' issue named as principal beneficiaries.

2.      Defendants Savannah Bank and Trust ("**SBT**"), Wiley Ellis ("**Ellis**"), individually, and as a representative of the law firm of Ellis, Painter, Ratteree, and Adams, LLP ("**the Firm**"), South State Bank ("**South State**"), Junior and Marilyn Casey Eitel ("**Marilyn**"), Wells Fargo, N.A., Wachovia Bank, N.A., and First Union Corp. working together as a racketeering enterprise, engaged in a pattern of racketeering activity to defraud Plaintiff of millions of dollars in assets left to Plaintiff by the Grandparents in the Issue Trust.

3.      Wells Fargo, N.A. ("**Wells Fargo**"), Wachovia Bank, N.A.("**Wachovia**"), First Union Corp. ("**First Union**"), South State, SBT and the Firm failed in the administration of honest services required as fiduciaries owing duties of loyalty and care to Plaintiff as a beneficiary of the Issue Trusts.

4.      Wells Fargo, Wachovia, First Union, South State and SBT also committed fraud, violated their fiduciary duties to Plaintiff, acted negligently and with gross negligence, and engaged in a civil conspiracy to enrich themselves at Plaintiff's expense.  Specifically, Wells

Fargo, Wachovia, First Union, South State, and SBT as trustees wrongfully obtained management fees and with knowledge, fostered the improper raid of Issue Trust assets either for improper purposes or to be directed to person(s) uncontemplated by Senior or Bernice's Wills or the Issue Trust's documents. Further, Wells Fargo, Wachovia, First Union, South State and SBT as trustees failed to produce any statement, annual or otherwise, which delineated or disclosed the purposes of Issue Trust principal encroachments or any investigation made into such purposes.

5.      PNC, N.A. ("**PNC**") and First Kentucky Trust ("**FKT**") violated their fiduciary duties, acted negligently and with gross negligence when both bank trustees, while administering the Issue Trust, allowed for the sale of certain Issue Trust assets, which held enormous value, in contravention of the prudent investor rule. Further, PNC and FKT as trustees failed to produce e statements, annual or otherwise, written or verbal, to Plaintiff, as principal beneficiary, during each bank trustee's possession and control of the Issue Trust from 1963 to 1994. Finally, PNC and FKT as trustees mis-titled the Issue Trust's instruments in a way which misrepresented the testator of the Issue Trust's instruments, titling such instruments in Junior's name, who was only the income beneficiary, instead of in Plaintiff's name, as the principal beneficiary.

6.      Ellis and the Firm breached their fiduciary duties to Plaintiff, as principal beneficiary of the Issue Trust, as well as committed legal malpractice, when Ellis, as representative and executive officer of SBT, forwarded, completed, and billed the Issue Trust for unreasonable and unnecessary legal work from SBT to the Firm, a business in which Ellis held an interest, constituting self-dealing in contravention of both his fiduciary duty to Plaintiff, as the Issue Trust's beneficiary, as well as his fiduciary duty to the trustee-bank as a shareholder/partner in the Firm. Ellis and the Firm's conduct constitutes a breach of their

fiduciary duties, negligence, and gross negligence, which resulted in Plaintiff incurring routine monetary damage which prevented the Issue Trust's assets from growth potential.

7.        Defendants Michael E. Cofield ("**Cofield**") and Bird, Cofield, and Moise, LLC ("**BCM**") aided and abetted the fraud and RICO violations of SBT, Ellis, the Firm, South State, Junior and Marilyn by permitting Junior to make principal encroachments on the Issue Trust to fund, in whole or in part, The Marilyn Casey Eitel Trust U/A/D 10/30/2003 ("**Marilyn Trust**"), thus allowing for funds to go to Marilyn, and not Plaintiff as specifically intended by the Grandparents.

8.        Marilyn was at no time a named or contemplated beneficiary of the Issue Trust in the Grandparents' Wills, and as provided by Senior's Will, Wells Fargo, Wachovia, First Union, South State, SBT, the Firm, Ellis, PNC, FKT, Cofield, BMC, Marilyn and Junior (collectively, "**Defendants**") had knowledge of such fact. Defendants breached their duties to Plaintiff by aiding and abetting Marilyn and Junior in successfully obfuscating the purpose of the Issue Trust to finance a new trust for Marilyn's benefit. Defendants knew or should have known the source of funds for the newly created Marilyn Trust, and due to that knowledge, aided and abetted Marilyn and Junior in their RICO, fraudulent, grossly negligent pilfering of funds from the Issue Trust.

9.        Marilyn and Junior, beyond their RICO crimes, via fraud and breach of Junior's fiduciary duty to Plaintiff, successfully raided and removed principal from the Issue Trust for the sole benefit of Marilyn and Junior, in means and for purposes not contemplated by the Grandparents. Marilyn and Junior knew full well the principal encroachments received were not permitted by the Grandparents' Wills did so with the full intention of disinheriting Plaintiff in favor of Marilyn.

10.     Plaintiff trusted and relied on Defendants and their representations, which continually omitted material information, which was undiscoverable, even after due diligence by Plaintiff, until September 2019.   Plaintiff trusted Defendants to take due care and for those fiduciaries, to have due care and loyalty to preserve and administer the Issue Trust in a manner which reflected the Grandparent's intentions as expressed in the Grandparents' Wills.

11.     Wells Fargo, Wachovia, First Union, South State, SBT, the Firm, Ellis, Cofield, BMC, Marilyn and Junior (collectively, the "**Enterprise Defendants**") executed an elaborate scheme to deprive Plaintiff of the Issue Trust, including the principal assets.   Further, the Enterprise Defendants intentionally prevented Plaintiff from discovering crucial and material information for the entirety of their possession, custody, and administration or relation with the Issue Trust, including specifically denying Plaintiff access to material information which would have unveiled the Enterprise Defendants' untoward conduct.

12.     SBT and South State's fraud and untoward conduct toward Plaintiff was completed with full knowledge, wherein SBT and South State breached all duties, fiduciary and otherwise owed to Plaintiff as beneficiary of the Issue Trust, by fostering the improper principal encroachments, using these encroachments to finance the newly created Marilyn Trust which is also administered by South State, in violation of KRS 386.820, RICO, and all state and federal causes of action in Plaintiff's claims.   SBT and South State did this with full knowledge of and in their own full participation in such a scheme to obfuscate the Grandparent's intentions regarding the Issue Trust, which resulted in the elimination of Plaintiff's inheritance, for the sole reason of enriching themselves for their own financial gain.

13.     John Doe, Jane Doe, and unknown others are yet to be identified as co-conspirators and/or other individuals or entities who either committed, conspired with, and/or

aided and abetted the Defendants in the acts set forth herein.

## I.     THE PARTIES

14.     Plaintiff, an individual, is domiciled in Dallas, Dallas County, Texas.

15.     FKT was the first trustee of the Issue Trust.  FKT was acquired or otherwise purchased by First National Bank ("**First National**") which was thereafter acquired or otherwise purchased by PNC Bank, N.A. ("**PNC**").  PNC is a Pennsylvania corporation .

16.     First Union was the successor trustee of the Issue Trust from FKT, and was domiciled in South Carolina.  First Union was acquired or otherwise purchased by Wachovia, who held their principal place of business in North Carolina.  Wachovia was acquired or otherwise purchased by Wells Fargo.  Wells Fargo, a company, is domiciled in Delaware with a principal place of business in Sioux City, South Dakota.

17.     SBT was the successor trustee of the Issue Trust from Wachovia, now Wells Fargo.  SBT was acquired or otherwise purchased by South State, who was the Issue Trust's last trustee.  South State is a South Carolina corporation.

18.     Junior, now deceased, was domiciled in South Carolina, and the executor of his estate is located in South Carolina.

19.     Marilyn, an individual, is domiciled in South Carolina.

20.     Ellis, an individual, is domiciled in Georgia.

21.     The Firm, a limited liability partnership, has its principal place of business in Georgia.

22.     Cofield, an individual, is domiciled in South Carolina.

23.     BMC, a limited liability company, operates a principal place of business in South

Carolina.

## II.    JURISDICTION AND VENUE

24.    This Court has jurisdiction pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331.

In the alternative, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

25.    The Court has venue pursuant to 28 U.S.C. § 1391 because the events at issue

took place in this District.

## III.    THE FACTS

26.    On May 14, 1963, Senior executed Senior's Trust Under Agreement, between

Senior and The Kentucky Trust Company, which in relevant part states;

> "That contemporaneously with the execution of this agreement [Senior] has delivered to the Trustee insurance policies on the life of [Senior]…and has caused the Trustee to be designated as beneficiary under such policies…
>
> ### ITEM III
>
> 1. After the death of [Senior] the net income of the trust shall be paid to [Berenice]…
>
> 3. Upon [Berenice's death], the Trustee shall divide the trust estate into two separate and equal trust funds for each of [Senior's] children and their families, including a fund for each child then living…The Trustee shall pay the net income from each child's fund to such child as long as he or she shall live. After the death of the child, the Trustee shall pay the net income from that child's fund to his or her spouse until the death or remarriage of such spouse, whichever shall first occur. After the last to occur of the death of each child and the death or remarriage of his or her spouse, the Trustee shall divide and distribute such child's fund, per stirpes amount the then living issue of [Senior].
>
> ### ITEM V.
>
> If at any time during the continuation of the trust or trusts created by the provision of Paragraph 3 of Item III it is necessary or advisable to use some portion of the fund or funds for the education, including college or professional education, or the maintenance in health and reasonable comfort of the income beneficiary or his or her issue, the Trustee is hereby authorized and empowered to use so much of said principle as in its opinion may

be necessary or advisable."

27.     Upon execution of Senior's Trust Under Agreement, FKT became the initial trustee of the Grandparents' Trusts, thereby establishing a fiduciary relationship with the beneficiaries of the Grandparents' Trusts. FKT held a relationship of special confidence, both in equity and in law, and was bound to act in good faith, with utmost loyalty, and with due regard to the interests of the Grandparents' Trusts' beneficiaries.

28.     Further, as Executors of the Grandparents' Wills, FKT held a relationship of special confidence, both in equity and in law, and were bound to act in good faith, with utmost loyalty, and with due regard to the interests of the Grandparents' Trusts' beneficiaries.

29.     On January 21, 1968, Senior executed Senior's Will, which in relevant part states:

### ITEM II

"If my wife [Bernice] survives me, I direct…my Executor divide all the property…. into two parts which shall be designated as "Part A" and "Part B". Part A and Part B shall be determined and disposed of as follows:

(1)     In Part A shall be included that fractional share of my estate equal to the maximum estate tax marital deduction allowable in determining the Federal Estate Tax on my gross estate…In making the computations necessary to determine such fractional share, the final determinations for Federal Estate Tax purposes shall control. No property shall be included in Part A which does not qualify for the Federal Estate Tax marital deduction…It is my intention that the value for Federal Estate Tax purposes of the property included in Part A shall be available for the marital deduction allowable by Federal Estate Tax law, and all questions applicable thereto shall be resolved accordingly…

(2)     In Part B shall be included all property then remaining…I direct that my Executor pay from Part B all estate taxes…Federal or state, imposed with respect to any property (whether disposed by this Will or not) required to be included in my gross estate for tax purposes,

(3)     I devise and bequeath Part A and Part B to my Trustee hereafter named, in trust nevertheless, as follows:

(a) The net income of Part A and the net income of Part B shall be paid to my wife [Berenice], during her life. Payment of income

shall be made at times fixed by the Trustee…

(e) On the death of my said wife, the assets of Part B shall be divided into two equal parts. The net income from one part shall be paid to my daughter [Rollins] during her life… **The net income from the other part shall be paid to my son, [Junior] during his life. Upon his death the then remaining corpus of the trust shall pass to his living issue, per stirpes, the share of any issue who has attained the age of thirty years to be distributed to him outright, and the share of any issue who has not attained the age of thirty years, to be held in trust ass hereafter provided**….

(f) Prior to the death of my said wife, the Trustee may pay to, or apply of the benefit of, my said son or daughter or his or her issue such portion of the corpus of Part B, as it may consider necessary, as determined in its sole discretion, for the health or maintenance of such child or the health, maintenance, or education of his or her issue, however, that the Trustee shall obtain the consent of my said wife to such encroachment….

(g) After the death of my said wife, **the Trustee may pay to**, or apply to the benefit of, any income beneficiary of a trust created hereunder or his issue, **all or any portion of that portion of the corpus of the trust with respect to which such income beneficiary is receiving the income, <u>when required</u> for the health, maintenance, education, general welfare or comfort of such income beneficiary**, as determined by the Trustee in its sole discretion.  Income or corpus thereafter payable to such beneficiary or his or her issue shall be reduced to reflect such encroachment."

(Emphasis added).  This established Senior's Trust Under Will.

30. In December, 1970, Senior passed away.

31. On July 9, 1976, Berenice executed Berenice's Will, which in relevant part states:

### ITEM VII

All the rest and residue of my estate, of every kind, nature and description I devise and bequeath to the Trustee hereinafter named, in trust nevertheless for the following use and purposes:

(1)     The net income of the trust shall be paid to my son, [Junior] during his life and after his death shall be paid to my daughter-in-law, Mary C. Eitel, during her life, if she survives him.  At the death of the last to survive of my son and daughter in law, **the then remaining corpus of the trust shall pass to my son's living issue per stirpes, the share of any issue which has attained the age of 35 years to be distributed to…**

> (2)     While my son or daughter-in-law are receiving the income
> of the trust, **the Trustee shall have the power to pay to, or apply
> for the benefit of either or for the benefit of their issue, such
> portion of the corpus of the trust as it may consider necessary,
> as determined in its discretion for their health and
> maintenance or the health, maintenance or education of their
> issue.**"

(Emphasis added).  This established Berenice's Trust.

32.     On March 7, 1977, Bernice executed the Codicil of Bernice L. Eitel (the

"**Codicil**"), which, in relevant part states:

> "I devise and bequeath to my son, [Junior]…15% of the residue of
> my estate, outright.  The balance of the residue of my estate shall
> be held and disposed as provided in Item VII."

33.     Pursuant to the Grandparents' Wills, the Grandparents took substantial effort to

arrange their affairs in a way to establish and fund Senior's Trust Under Agreement, Senior's

Trust Under Will, and Berenice's Trust as generation-skipping trusts to pass their assets on to

their eight (8) grandchildren, establishing the grandchildren as principal beneficiaries.

34.     During Berenice's lifetime, she did not once encroach on the corpus of Senior's

Trust Under Agreement or Senior's Trust Under Will.

35.     In June, 1977, Bernice passed away.

36.     The Grandparents specifically arranged for and instructed the Grandparents'

Trusts borrow from FKT to pay the inheritance taxes, so the corpus would, when time, pass to

the grandchildren free of tax obligations.

37.     After the death of Senior and until the death of Berenice, FKT followed the

instructions provided for in Senior's Trust Under Will and Senior's Trust Under Agreement.

38.     Upon Plaintiff's information and belief, from 1977 through 1993, Junior made no

principal encroachments.

39.     From 1977 through 1993, FKT, without the knowledge and consent of Plaintiff, failed to protect the Grandparents' Trusts, by breaching the fiduciary duty owed in conformance with the requirements of the Grandparents' Trusts as well as the standard of care for a trustee.

40.     By way of example, one of the assets provided to the Issue Trust consisted of stock in Porter Paint Company, a privately held corporation. No reasonable prudent investor would liquidate an asset of that character, but the trustee allowed for the liquidation of these assets, without any notification of Plaintiff.

41.     In the early 1980s, without Plaintiff's knowledge, let alone consent, FKT liquidated half of the Illinois farms which were assets to the Issue Trust, even though the value was increasing almost every single year and the income was consistently increasing as well.

42.     These actions, as well as others which are unknown due to FKT's failure to notify Plaintiff of any activity on the Issue Trust, evidence a breach in the fiduciary requirement to protect the corpus.

43.     In 1986, Junior and Marilyn were married. As such, Marilyn was not the "spouse" referenced in the Grandparents' Wills, as Junior was married at the time of the drafting.

44.     In 1994, the Issue Trust was transferred from FKT to First Union, in South Carolina, without Plaintiff's knowledge or consent.

45.     As of 1994, Junior and First Union knew or should have known a principal encroachment on its own could not be a legitimate basis for an increase in comfort, as Junior's comfort had been unchanging and without principal encroachment for close to twenty (20) years.

46.     It has come to light Junior did not start his principal encroachments until Junior moved the Issue Trust out of Kentucky and married Marilyn, the necessity for which, based on prior conduct, is absent.

47.     On information and belief, Junior had no substantial health issues or education needs which would allow for the Trustee to permit any principal encroachments.

48.     From 1994 to 2003, Wells Fargo, First Union, Wachovia, and SBT failed to produce any statements or communications to Plaintiff regarding the Issue Trust and fostered, allowed and encouraged monthly principal encroachments of the Issue Trust for unknown reasons.

49.     Plaintiff does not know what the monthly principal encroachments were for or if they were permitted by the Grandparents' Wills, as Wells Fargo, First Union, Wachovia and SBT refused, and continues to refuse, to provide Plaintiff information regarding the principal encroachment distributions.

50.     At one point, Plaintiff drove to Savanah, Georgia and verbally demanded financial statements for the Issue Trust, which were eventually provided, although SBT would only provide annual statements without any information about the encroachments.

51.     Plaintiff completed her due diligence in attempting to discover or uncover the justification of the principal encroachments, and as a beneficiary to the Issue Trust, Plaintiff was entitled to the information requested, and SBT purposefully hindered Plaintiff's access to such information, which is material and without which Plaintiff cannot establish, let alone verify, the legitimacy of any principal encroachment.

52.     Additionally, SBT continued to omit the information that was necessary for Plaintiff to determine the legitimacy of the principal encroachments. The fraudulent omissions

regarding the character and basis for principal encroachments was communicated to Plaintiff both through the United States mail and via electronic mail, from 2004 to present.

53.     On information and belief, South State and SBT committed bank fraud wherein they transferred within their bank and with full knowledge, Interest Trust principal to Junior and Marilyn wherein Marilyn could in contravention to the Grandparents' Wills control and receive principal assets.

54.     From 1977 through today, no trustee of the Issue Trust provided any information or justification for the principal encroachments made to Junior, whether legitimate or not pursuant to the Grandparents' Will restrictions.

55.     Over the lifetime of the Issue Trust, Junior and Ellis created unnecessary legal matters the costs of which have been borne by the Issue Trust, robbing Plaintiff of valuable assets.

56.     Ellis, while president of SBT, forwarded numerous unnecessary legal matters to the Firm, a business he holds a personal financial interest in, which resulted in depletion of Issues Trust assets and constituted self-dealing and breach of his fiduciary duties to Plaintiff.

57.     In complete contradiction to the Grandparents' Wills, Cofield, as a member of BMC, established the Marilyn Trust, wherein Cofield knew or should have known the source of funds for such a trust were restricted for use, and such restriction specifically excluded Marilyn as the beneficiary.

58.     South State currently has the bank accounts associated with the Issue Trust and is responsible for the management of those accounts.

59.     Upon information and belief, Junior and Marilyn opened a joint account with right of survivorship at South State.

60.     During the trust termination proceeding initiated by South State in Kentucky District Court, in September 2019, Plaintiff discovered at least some principal assets of the Issue Trust were being transferred from the South State Issue Trust bank account into the South State joint account of Junior and Marilyn. As the Trustee of the Issue Trust, this is a blatant breach of the Issue Trust restrictions, as South State knows Marilyn is not a named or intended beneficiary.

61.     South State permitted Junior and Marilyn to transfer Issue Trust assets which were under the alleged protection of South State, to another South State account, a marital account held by Junior and Marilyn, which allowed Marilyn to remove assets from the Issue Trust which did not belong to her.

62.     As a result of trust termination proceedings initialed by South State, South State has unjustifiably withheld roughly $300,000.00 worth of assets under the guise of "legal fees and costs associated with final distribution," which should be undisputed given the income beneficiary died in November, 2018.

63.     In addition to allowing the improper transfer of Issue Trust principal assets in its own bank, South State, upon presentment of the final accounting of the Issue Trust remaining corpus, failed to identify an appropriately $300,000 investment account, which Plaintiff identified, with South State subsequently blaming the lost $300,000 on a "computer glitch."

64.     Further, South State has now reserved $300,000 of Plaintiff's Issue Trust principal under the false premise South State, as trustee, is defending or addressing an objection by Plaintiff when in reality they are merely utilizing the Issue Trust funds to defend their own tortious conduct.

65.     Upon information and belief, Junior and Marilyn knew or should have known the actions taken regarding the encroachment of the principal of the Issue Trust were improper both in character and in recipient.

66.     As a result of each and every principal encroachment allowed, the Issue Trust incurred capital gains taxes, which were paid from the Issue Trust principal, resulting in lost benefit of asset growth and the protected intent of Senior and Berenice to avoid such a tax.

## COUNT I:     RACKETEERING
### (Against SBT, South State, Ellis, individually, and as representative of The Firm, The Firm, The Estate of Paul T. Eitel, Jr., Marilyn, Cofield, individually and as representative of BCM, and BCM)

67.     The Plaintiff realleges the facts set forth in Paragraphs 1 through 62 above.

68.     Section 1964(c) of Title 18, United States Code, or the Racketeer Influenced and Corrupt Organizations Act states that "[a]ny person injured in his business or property by reason of a violation of section 1962…may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

### The Enterprise

69.     From 1994 through to Junior's death in late 2018, Junior, Marilyn, SBT, South State, Cofield, Ellis, the Firm, BCM, Wells Fargo, Wachovia, and First Union ("**Enterprise Defendants**") acted as an association in fact to commit criminal acts, including to commit mail fraud, wire fraud, and bank fraud, all in an effort to deprive Plaintiff of valuable assets in the Issue Trust, and to acquire those assets for Junior, Marilyn, and others not contemplated by the Issue Trust, as well as for the others to continue to collect legal, management, and administration fees and deprive plaintiff of the honest services of the trustees tasked to administer the Issue Trust.

70.     The association of the Enterprise Defendants constitutes an "enterprise" as defined by Title 18, United States Code, Section 1961(4).  The enterprise constitutes an ongoing organization whose members functioned as a continued unit for a common purpose of achieving the objectives of the enterprise.  The enterprise was engaged in, and its activities, affected interstate commerce, in that it controlled and affected the sale or purchase of stocks, bonds, real estate, in Kentucky, Georgia, South Carolina, and other states.

71. The purposes of the enterprise included the following:

   A.) To wrongfully deprive Plaintiff of her rightful inheritance of the principal assets of the Issue Trust, and to acquire it for Junior, Marilyn, and others;

   B.) To wrongfully deprive Plaintiff of her rightful inheritance of the principal assets of the Issue Trust while generating lucrative and unnecessary administration costs and legal fees for the Enterprise Defendants' own benefit

72.     The Enterprise Defendants participated in the operation and management of the enterprise by formulating the schemes to accomplish the goals listed above by executing those schemes by racketeering acts, and by directing their attorneys and others in the means necessary to accomplish them.

### The Pattern of Racketeering Activity

73.     From 1994 through Junior's death in late 2018, the Enterprise Defendants, being associated with the enterprise referenced herein, an enterprise engaged in, and the activities of which affected interstate commerce, unlawfully conducted the affairs of that enterprise through a pattern of racketeering activity, that is, through the commission of the Racketeering Acts set forth below in more detail.  The Racketeering Acts were continuous from 1994 to 2018.  They are all connected, related, and committed by the same members of the racketeering enterprise, using the same methods of illegal activity, and dedicated to the common goals listed above herein.

## The Racketeering Acts

### *Racketeering Act Numbers 1 through 71*:

74.     The Plaintiff incorporates Paragraphs 1 through 62 of the Complaint as if fully set forth below.

75.     From 1994 to 2018, the Enterprise Defendants devised and participated in a scheme to defraud Plaintiff. The scheme was intended to deprive Plaintiff of securities held in the Issue Trust for her benefit as well as the honest services of the Enterprise Defendants. The scheme was also intended to enrich the Enterprise Defendants and other unknown persons not contemplated in the Issue Trust.

76.     The Enterprise Defendants knew Senior and Berenice intended for the principal assets to be bequeathed to Plaintiff. Further, SBT, South State, Ellis, the Firm, Wells Fargo, Wachovia, First Union, Cofield and BMC held fiduciary duties to Plaintiff and the Issue Trust which required them to exercise such duty not to allow detrimental or improper principal encroachments and to do due diligence investigations into the purposes and usages as espoused by Junior. In spite of this knowledge, the Enterprise Defendants made and caused others to make materially false statements and omissions as set forth in Paragraph 52 and 53, above.

77.     SBT, South State, Wells Fargo, Wachovia, First Union, Ellis, and the Firm violated their duty of honest services to the Plaintiff, principal beneficiary of the Issue Trust, taking or failing to take the actions set forth in Paragraph 52 and 53, above.

78.     Plaintiff relied on the statements and omissions to her detriment by not objecting to the improper conduct intentionally hidden from her by the Enterprise Defendants.

79.     To execute the scheme to defraud, the Enterprise Defendants caused the use of the United States Mail, related to the Racketeering Act Nos. 1-71, as follows:

Racketeering Acts 1 through 10:   Annual Statements mailed by SBT and South State intentionally omitting material information regarding the improper purposes for principal encroachments to the Issue Trust principal.

Racketeering Acts 11 through 70:   Monthly Statements mailed by SBT and South State intentionally omitting material information regarding the improper purposes for principal encroachments to the Issue Trust principal.

Racketeering Act 71:   Final Issue Trust Termination accounting mailed by SBT intentionally omitting material information regarding the improper purposes for principal encroachments to Issue Trust principal.

Racketeering Act 72+:   Ellis, SBT, Wells Fargo, South State, and Junior all made phone calls and emails to Plaintiff misleading her as to the Enterprise Defendant's conduct, in furtherance of the enterprise, and constituting wire fraud, in furtherance of the enterprise and intentionally omitting material information about the improper Issue Trust principal encroachments allowed and received and financially benefitted on by Enterprise Defendants.

80.     The Enterprise Defendants' acts constitute mail fraud and bank fraud as prohibited by Title 18, United States Code, Section 1341, 1344, and 1346.

81.     Plaintiff exercised due diligence to investigate and uncover the Enterprise Defendants fraudulent conduct, but Enterprise Defendants intentionally and steadfastly denied Plaintiff access to the material information sought in furtherance of the enterprise.

## DAMAGES

82.     The acts of the Enterprise Defendants described above have caused injury in the Plaintiff's business and property by reason of a violation of 18 U.S.C. § 1962, and she herein sues for triplicate the damages she sustained and the cost of this suit, including reasonable attorney fees, in an amount to be determined during trial.

## COUNT II:   FRAUD
## (Against Wells Fargo, Wachovia, First Union, SBT, South State, Junior, Marilyn, Ellis, the Firm, Cofield, and BMC)

83.     Plaintiff incorporates Paragraphs 1 through 62 of the Complaint as if fully set forth below.

---

84.     The Enterprise Defendants made false statements of material fact about the principal encroachments of Issue Trust assets and failed to disclose material information which caused those statements to be false and misleading, as detailed in this Complaint and incorporated herein.

85.     The statements and omissions made by the Enterprise Defendants were intended to and did deceive Plaintiff.

86.     The statements and omissions by the Enterprise Defendants were intended to and did cause Plaintiff to rely to her detriment on such statements and omissions.

87.     Plaintiff did not, could not, and should not have reasonably discovered the fraud until September 2019.

88.     The Enterprise Defendants actions have caused the Plaintiff damages in an amount to be shown at trial.

89.     The Enterprise Defendants acted with oppression, fraud, and malice towards Plaintiff by acting in their own self-interest without due regard for the rights of the Plaintiff and without adequate inheritance for her.  The Plaintiff seeks punitive damages for the Enterprise Defendants' deliberate, willful, and malicious conduct.

## COUNT III
## BREACH OF FIDUCIARY DUTY AS TRUSTEES AND INCOME BENEFICIARY OF THE ISSUE TRUST
### (Against PNC, FKT, Wells Fargo, First Union, Wachovia, SBT, South State, the Firm, BMC, and Junior)

90.     Plaintiff incorporates Paragraph 1 through 45 of the Complaint as if fully set forth below.

91.     PNC, FKT, Wells Fargo, First Union, Wachovia, SBT, South State, the Firm, BMC, and Junior acted in violation of their fiduciary duties as trustees, beneficiary, and

attorneys for the Issue Trust, by causing valuable assets to be sold in contravention of the prudent investor rule, allowing the improper withdrawal of principal assets of the Issue Trust paid to others uncontemplated by the Issue Trust or for uncontemplated purposes, rather than to be preserved for Plaintiff as intended by Senior and Berenice, as well as using Issue Trust assets to finance the Marilyn Trust for the benefit of Marilyn, in direct contravention of the wills of Senior and Berenice.

92.     These Defendants took on the fiduciary duty by law and willingly to protect the interests of Plaintiff. These Defendants failure to comply with their duties constitutes a breach of their fiduciary duties owed to Plaintiff as principal beneficiary of a generation skipping trust.

93.     Plaintiff did not, could not and should not have discovered the fraud and breach of duties committed by the aforementioned defendants until late 2019.

94.     Plaintiff has been damaged to a severe degree of which will be presented at trial.

95.     The aforementioned defendants acted with oppression, fraud, and malice towards the Plaintiff by acting in their own self-interest and the interests of others not contemplated by the Issue Trust, and without due regard for the rights of Plaintiff or any just compensation for such associated injuries and damages. The Plaintiff seeks punitive damages for this conduct.

### COUNT IV
### CIVIL CONSPIRACY/AIDING AND ABETTING
### (Against all Enterprise Defendants)

96.     Plaintiff incorporates Paragraphs 1 through 51 of the Complaint as if fully set forth below.

97.     All Enterprise Defendants stood to reap material and substantial financial gain by misappropriating Issue Trust assets for improper purposes to Junior, Marilyn, the Marilyn Trust, and others uncontemplated in the wills of Senior and Berenice which established the Issue Trust.

98.     All Enterprise Defendants knowingly joined with or aided and abetted each other in an enterprise constituting (a) a breach of their fiduciary duties and constructive fraud and (b) loss of inheritance by fraud, duress, or other tortious means, and therefore the Enterprise Defendants are jointly and severally liable for damages to Plaintiff.

99.     The Enterprise Defendants conspired in a corrupt of unlawful combination or agreement, to in concert, an unlawful act or to accomplish unlawful acts by unlawful means and are thereby jointly and severally liable to Plaintiff for damages.

100.    Plaintiff has been damaged in a severe amount which will be shown at trial.

101.    The Enterprise Defendants acted with oppression, fraud, and malice towards Plaintiff, acting in their own self-interests without due regard for the rights and interests of Plaintiff and without due compensation to Plaintiff for Enterprise Defendants' conduct.  Plaintiff will be seeking punitive damages for the deliberate, willful, and malicious conduct of the Enterprise Defendants.

**COUNT V**
**TORTIOUS INTERFERENCE WITH AN INHERITANCE**
**(Against All Defendants)**

102.    Plaintiff incorporates Paragraphs 1 through 58 of the Complaint as if fully set forth below.

103.    All Defendants were in a position to know, did know, should have known, and were reckless in not knowing the Issue Trust principal assets were reserved for Plaintiff and skipped Junior's generation (generation skipping trust), for the express purpose of avoiding estate and inheritance taxes.

104.    All Defendants breached their duties owed to Plaintiff by permitting, assisting in, liquidating, and distributing copious amounts Issue Trust principal assets for improper purposes

and to improper recipients, causing the Issue Trust to incur capital gains taxes and administrative fees which were specifically supposed to be avoided. Allowing such rampant, groundless, and contraindicated principal distributions without Plaintiff's knowledge, obfuscated a fundamental purpose of the generation skipping trust: to avoid taxes.

105.    All Defendants breached their duties to Plaintiff by allowing contraindicated liquidation of Issue Trust assets against the prudent investor rule, moderating and assisting the copious and improper principal withdrawals, and such conduct deprived Plaintiff of assets intended to be bequeathed to her as expressed in the wills of Senior and Berenice.

106.    By the conduct expressed in this Complaint, all Defendants by fraud, duress, or other tortious means, prevented Plaintiff from receiving the assets willed to her by Senior and Berenice.    All defendants are liable to Plaintiff for the damages associated with the aforementioned conduct to be delineated at trial in further detail.

107.    All Defendants acted negligently and their conduct constituted gross negligence as they both subjectively and objectively knew of the risk of harm to Plaintiff in their conduct, yet proceeded in indifference to Plaintiff's rights, causing Plaintiff significant injury and damage. Plaintiff seeks punitive damages for all defendants' conduct.

## COUNT VI
## PROFESSIONAL NEGLIGENCE
### (Against Ellis and the Firm)

108.    Plaintiff incorporates Paragraphs 1 through 63 of the Complaint as if fully set forth below.

109.    At all times relevant to this Complaint, Ellis held conflicting and contrasting fiduciary duties – as vice president of SBT, Ellis had a fiduciary duty in that capacity towards all beneficiaries of the Issue Trust, including Plaintiff. Further, the Firm owed fiduciary duties to

the Issue Trust and its beneficiaries during its continual representation of the Trust for unnecessary and improper legal services which enriched Ellis, the Firm and SBT, aided Junior in his fraud, and cost Plaintiff valuable assets and taxes which could have earned significant gains in the stock market but for Ellis' and the Firm's conduct.

110.    Further, Ellis, breached his fiduciary duty to Plaintiff by referring legal services to a business in which he held a personal interest, a conflict which was never disclosed to Plaintiff, nor at any time waived by Plaintiff.

111.    Ellis' and the Firm's conduct constitutes professional malpractice because of the intentionally undisclosed conflict which personally benefitted Ellis, even though he owed fiduciary duties to Plaintiff.  The Firm also violated its fiduciary duties to Plaintiff by failing to make full disclosure of these aforementioned facts and continuing to operate to Plaintiff's detriment and causing Plaintiff financial harm via unnecessary legal fees, taxes on liquidated Issue Trust assets, and lost gains by such liquidated assets.  All of this conduct continually and routinely caused financial damage to Plaintiff, violated the duties owed by Ellis and the Firm to Plaintiff, and constitutes professional malpractice.

112.    All of the Firm's and Ellis' conduct constitutes gross negligence and Plaintiff seeks punitive damages for such grossly negligent conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against the defendants as

follows:

A.) On Count I, treble damages of the actual damages Plaintiff has incurred, including: (a) The value of the Porter Paint Stock sold by PNC in contravention of the prudent investor rule and all income, interest, and dividends associated with such holdings had they not been liquidated, (b) the value of the Illinois farms sold by PNC in contravention of the prudent investor rule and all income, interest, and dividends associated with such had it not been improperly liquidated, (c) the value of all assets

removed by Junior and aided and contributed by all Enterprise Defendants for the benefit of Junior, Marilyn, the Marilyn Trust, or others, which was not in accordance with the Issue Trust parameters and Senior and Berenice's wishes, including lost gains of all assets liquidated and taxes incurred by such liquidation;

B.) On Counts II through VI, compensatory damages against all defendants, jointly and severally, in an amount to be determined at trial, including (a) the value of improperly liquidated Issue Trust assets, any lost income, dividends, interest thereon, (b) the value and amount of the lost assets due to incurred taxation which was in contravention of the purpose of the Issue Trust, (c) conveyance of all Issue Trust assets or equivalent as currently held by any defendant as conveyed to them, (d) the value of all unnecessary fees and costs associated with the liquidation of Issue Trust principal assets and any associated market losses;

C.) On Counts II through VI punitive damages from all Defendants, jointly and severally;

D.) A complete and full accounting of all Issue Trust assets liquidated at any time under the direction of Junior or any other defendant or during the enterprise, including all currently held assets transferred to Junior, Marilyn, or the Marilyn Trust, as well as all fees and costs associated with the services of any defendant during the enterprise or administration of the Issue Trust, including all gains, profits, or other things of value derived by defendants in their administration and/or receipt of Issue Trust assets or liquidated funds;

E.) That South State be required to distribute all Issue Trust assets to Plaintiff without any reduction for any legal fees, administration, costs, or otherwise associated with the administration of the Issue Trust, winding up the Issue Trust, or initiation and continuation of any legal dispute relative to the Issue Trust;

F.) That the Court award Plaintiff's reasonable attorney fees and pre-judgment interest;

G.) A trial by jury on all issues so triable; and

H.) The Plaintiff be granted all other relief, at law or in equity, to which she may be justly entitled.

Respectfully submitted,

Mary Eitel
Plaintiff Pro Se
2525 Carlisle Street, Suite 733
Dallas, TX 75201

917-628-6020
eitelco@aol.com