UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARY EITEL                                                                   Plaintiff

v.                                                      Civil Action No. 3:20-cv-12-RGJ

PNC BANK, N.A. ET AL                                                       Defendants

* * * * *

## MEMORANDUM OPINION & ORDER

Plaintiff Mary Eitel ("Plaintiff") moves to amend her Complaint. [DE 90].  Defendants PNC Bank, N.A. ("PNC"), South State Bank, N.A. ("South State Bank"), Marilyn Casey Eitel ("Marilyn Eitel"), Wells Fargo & Company, Wachovia Bank, N.A., and First Union Corporation (collectively "Wells Fargo Defendants"), and Wiley Ellis ("Ellis"), individually and on behalf of Ellis, Painter, Ratterree & Adams, LLP ("the Firm"), responded. [DE 91, 92, 93, 94, 95].  Plaintiff replied. [DE 99].   In addition, before Plaintiff filed the present Motion to Amend, various Defendants moved to dismiss, including Defendant Michael E. Cofield.[1] [DE 23, 37, 41, 43, 44, and 45].  Plaintiff responded [DE 66]. For the reasons below, the Motion to Amend [DE 90] is **GRANTED** and the motions to dismiss are **DENIED** [DE 23, 37, 41, 43, 44, and 45].

## I.   BACKGROUND

Plaintiff alleges that Defendants have denied her rightful trust benefits in three trusts created by her paternal grandparents.

### 1.   The testamentary trusts – Senior's Trust Under Will and Bernice's Trust Under Will

The first trust at issue was created by Plaintiff's paternal grandfather, Paul T. Eitel, Sr. ("Senior"): the 1968 Paul T. Eitel, Sr. Trust Under Will ("Senior's Trust Under Will") [DE 23-2;

---

[1] Plaintiff's Proposed Second Amended Complaint drops Michael E. Cofield as a party.

DE 90-1 at 1255]. The second trust was created by Plaintiff's paternal grandmother, Berenice L. Eitel ("Bernice"): the 1977 Bernice L. Eitel Trust Under Will ("Bernice's Trust Under Will") [DE 23-3; DE 90-1 at 1257]. Both Senior's Trust Under Will and Bernice's Trust Under Will paid income to Plaintiff's father, Paul T. Eitel, Jr. ("Junior"), during his lifetime. These trusts permitted discretionary distributions of trust principal to Junior for his health, maintenance, and welfare. Upon Junior's death, each testamentary trust distributed remaining assets equally ("per stirpes") to Junior's then-living children.

## 2.   The inter-vivos trust – Senior's Trust Under Agreement

The third trust is an inter-vivos trust created by Senior: the 1963 Paul T. Eitel, Sr. Trust Agreement ("Senior's Trust Under Agreement") [DE 23-4; DE 90-1 at 1245].   Senior's Trust Under Agreement paid income to Plaintiff's grandmother, Berenice, during her lifetime.  [*Id.*] Upon Berenice's death, the trust required the remaining principal be divided equally into separate trusts for the benefit of Senior's then-living children "and their families."  [*Id.*]  At the time of Berenice's death in 1977, Senior had two surviving children: Junior and Helen Rollins.  Plaintiff was twenty years old for when Berenice died.  [DE 90-1 at 1249].

Senior's Trust Under Agreement required that the income of the trust created for Junior's benefit be paid to him during his lifetime.  [DE 90-1 at 1255].  Like Senior's Trust Under Will and Bernice's Trust Under Will above, Senior's Trust Under Agreement also entitled the trustee to use "some portion of the fund or funds for the education . . . or the maintenance in health and reasonable comfort of the income beneficiary," including Junior.  [*Id.*]  The parties dispute what should happen under this trust upon Junior's death.  Plaintiff argues that upon Junior's death the

assets of the trust are to be distributed to Junior's then-living issue.[2]  South State Bank argues that upon the death of Junior, his then-living spouse, Marilyn, was to continue to receive income and upon her death, the assets of his trust were to be distributed "per stirpes" to the then-living "issue" of Junior.

### 3.   The Present Federal Lawsuit

Plaintiff filed a pro se complaint in this Court on January 8, 2020 claiming Racketeering, Fraud, Breach of Fiduciary Duty, Civil Conspiracy/Aiding and Abetting, Tortious Interference with an Inheritance, and Professional Negligence.  [DE 1].   South State Bank moved to dismiss. [DE 23].  Less than two months later, Plaintiff then filed an Amended Complaint pro se without seeking consent of the other parties or leave of the Court.[3] [DE 34]. The Wells Fargo Defendants moved to dismiss [DE 37, DE 41], and motions to dismiss were filed by PNC Bank [DE 43], South State Bank and Savannah Bank and Trust [DE 44], and Michael E. Cofield [DE 45].  Eitel engaged counsel to represent her and now seeks to amend her complaint a second time ("Proposed Second

---

[2] Plaintiff argues that the "spouse" referenced in Senior's Trust Under Agreement is not Junior's wife Marilyn. Plaintiff argues that Item IV of this trust provides that "[e]very trust created hereunder shall terminate, in any event, twenty-one (21) years after the death of the last to survive of Settlor's wife, Berenice Lawson Eitel, Settlor's children, their spouses and issue, living on the date of the execution of this agreement . . . ."  Plaintiff argues the reference to "spouse," could therefore only be to Plaintiff's mother to whom Junior was married when this trust was executed.  [DE 99, Reply at 1484, n.2].

[3] When a pleading is amended without leave of court or consent of opposing parties, it may either be considered a nullity, *United States ex rel. Mathews v. HealthSouth Corp.,* 332 F.3d 293, 296 (5th Cir. 2003), or taken as properly introduced "as long as the amendments do not unfairly surprise or prejudice the defendant," *Hicks v. Resolution Trust Corp.,* 767 F. Supp. 167, 170 (N.D. Ill. 1991); *see* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1484 (noting that an improperly filed amended complaint may be still allowed "when leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change.").

Amended Complaint"). [DE 90].  Eitel's Proposed Second Amended Complaint is sixty-four pages long. [DE 90-1].[4]

The complete factual allegations of Plaintiff's claims are discussed below in relation to the claims.  Among many complaints, the chief claim is that the various trustees permitted encroachments by Junior of the three trusts' principal that were unnecessary or improper and designed to transfer money from the trusts to Junior's wife, Marylin, and to fund a trust for Marilyn. [DE 90-1 at 1267, 1281].

4. <u>The Probate Matters relating to Senior's Trust Under Will and Bernice's Trust Under Will</u>

South State Bank, as trustee, filed two proceedings in Kentucky state probate court to modify the testamentary trusts in 2016:  *In re: Paul T. Eitel, Sr. Trust U/W FBO Paul T. Eitel, Jr.*, Jefferson District Court (Probate), Case No. 16-P-004454 ("Probate Case 4454") and *In re: Berenice L. Eitel Trust U/W FBO Paul T. Eitel, Jr.*, Jefferson District Court (Probate), Case No. 16-P-004453 ("Probate Case 4453").   After Junior died in November 2018, South State Bank moved the probate court in those proceedings to settle the trusts' accounts and make final distributions to Plaintiff and her brother, Paul T. Eitel, III.  After filing her Complaint in this case, Plaintiff objected to South State Bank's proposed final distributions and accountings in these

---

[4] Under the Proposed Second Amended Complaint, Eitel alleges: (1) racketeering under 18 U.S.C. 1964(c) against South State, Wells Fargo, Ellis, the Firm, and Junior, and Marilyn [DE 90-1 at 1299]; (2) fraud against PNC Bank, Wells Fargo, South State, Junior, Marilyn, Ellis, and the Firm [DE 90-1 at 1303]; (3) breach of fiduciary duty as trustee and income beneficiary of the Issue Trust against PNC, Wells Fargo, South State, Ellis, the Firm, Junior, and Marilyn as power of attorney for Junior [DE 90-1 at 1304-05]; (4) professional negligence against Ellis and the Firm [DE 90-1 at 1307]; (5) breach of duty of good faith and fair dealing against Junior, Marilyn acting under power of attorney for Junior, PNC Bank, Wells Fargo, and South State [DE 90-1 at 1308]; (6) intentional interference with contract against Marilyn individually [DE 90-1 at 1309];  (7) seeks a constructive trust against Marilyn individually [DE 90-1 at 1310]; (8) seeks an accounting from PNC Bank, Wells Fargo, South State, and Advisory [DE 90-1 at 1310-11]; (9) negligence against PNC Bank, Wells Fargo, South State, and Advisory [DE 90-1 at 1311]; (10) alleges abuse of process against South State [DE 90-1 at 1312], and (11) alleges negligence per se against South State [DE 90-1 at 1312-13].

Kentucky probate proceedings. [DE 23-1 at 125; 23-7, Objection in Probate Case 4454]. In Probate

Cases 4453 and 4454, South State Bank alleged that Plaintiff objected to the proposals for final

distribution and the accountings [DE 23-5; DE 23-6], but South State Bank did not attach a copy

of the actual objections, only its Motions to Resolve Objections filed in the probate matters.  South

State Bank did however attach Plaintiff's Response to its Motions to Resolve Objections in Probate

Case 4454, which states the objections Plaintiff's then-counsel filed about the Trustee's proposed

final distribution, accounting, and trustee's report:

- The $60,491.94 encroachment for the benefit of [Junior] [DE 23-7 at 204];

- Payment of legal fees incurred by Junior to modify and redraft the trust to add an Investment Direction Advisor so that he could move the trust from South State Bank to Charles Schwab Bank [DE 23-7 at 204];

- Payment of $14,000 of Junior's legal fees from the principal of the trust, the balance being allocated between Bernice's Trust Under Will and the Paul T. Eitel Irrevocable Trust U/A FBO Paul T. Eitel, Jr. [DE 23-7 at 204-05];

- $220,539 encroachments for 2017 [DE 23-7 at 205];

- Continuing assessment of investment management fees, which continue to be charged after the terminating event and which Plaintiff asserted should be refunded [DE 23-7];

- Failure to provide copies of Trustee's minutes of the meetings, reviews, and decision process in permitting principal encroachments to Junior [DE 23-7 at 205];

- Failure to document any renewal of Junior's requests for principal encroachments [DE 23-7 at 206];

- The Trustee failed to exercise requisite care and due diligence to properly account for the assets in the proposed final distribution [DE 23-7 at 206];

- Failure to prove documents to support encroachments [DE 23-7];

- Investment performance during the last five years and projections showing that combined fair market values for both Senior's Trust Under Will and Bernice's Trust Under Will should have been $2,358,011 rather than $1,255,746, if the Trustee had properly invested the assets [DE 23-7 at 207];

- Substantial and ongoing principal encroachments to Junior for $453,831 since January 1, 2014 through December 31, 2018 for Senior's Trust Under Will [DE 23-7 at 207-08] with no supporting documentation;

- The trustee breached its duty of impartiality under KRS 386B.8-030 by systemically dissipating the assets of the trust through principal encroachments [DE 23-7 at 208];

- The amount of the Trustee's partial distribution of only $175,883 and holdback amount that was 25% of the total trust assets [DE 23-7 at 209].

It is unclear from the filings whether the above represents all or just some of the objections that Plaintiff filed in Probate Case 4454.  South State Bank did not attach a copy of the objections that Plaintiff filed in Probate Case 4453.

After Plaintiff filed the present lawsuit in this Court, the Jefferson District Court issued orders tendered by South State Bank in Probate Case 4454 and Probate Case 4453 overruling Plaintiff's objections, approving South State Bank's accounts, and approving South State Bank's proposal for final distribution for Senior's Trust Under Will and Bernice's Trust Under Will. [DE 44-6 at 989-995].  The probate court orders also stated that South State Bank "properly administered [each] Trust according to its terms and satisfied its fiduciary duties to the Trust beneficiaries" including to Plaintiff. [DE 44-6 at 989, 992].  Plaintiff moved the Jefferson District Court to vacate these orders partly arguing that this federal action required they be stayed [DE 44-9],[5] but the Jefferson District Court denied Plaintiff's motion. [DE 44-10].  These two cases are now on appeal at the Jefferson Circuit Court, 20-CV-000044 and 20-CV-000045.

---

[5] Plaintiff asserted in these two probate matters "[t]he Eitel probate matter will have to be held in abeyance while the Federal complaint against the 3 trustees and others is decided. The Federal matter will affect the portion of liability South State Bank is responsible for." [DE 23-9]. Plaintiff stated in a January 31, 2020 email that "I will be seeking a continuance of, stay, and abatement of the Kentucky Probate proceedings while the federal complaint continues." [DE 23-10].

a.   The Probate Matter related to Senior's Trust Under Agreement

After Plaintiff sued Defendants in this Court, South State Bank initiated a probate proceeding in Jefferson District Court to dissolve Senior's Trust Under Agreement because the assets fell under a certain threshold: *Estate of Paul T. Eitel,* Jefferson District Court (Probate), Case No. 20-P-00615 ("Probate Case 615").    In that case, the probate court denied South State Bank's petition, holding that South State Bank has the authority to dissolve the trust under its powers as trustee and that the Court would not substitute its own judgment for that of the trustee. [DE 92-4 at 1396-97]. Since then, South State Bank petitioned the Jefferson District Court to terminate the trust and distribute its assets. [DE 92-5]. South State Bank and Plaintiff have not updated the Court as to the status of this matter, although it appears the case is on appeal at the Jefferson Circuit Court, Case No. 20-CV-000073.

## III.    DISCUSSION

Defendants assert various arguments that Plaintiff's second amended complaint should not be permitted and is futile. South State Bank also argues that the Court should abstain from exercising jurisdiction over this case under the abstention doctrine set forth in *Colorado River* and further that the Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine because of the probate matters in Jefferson District Court. The Court must first ensure it has jurisdiction. Thus, it will first address South State's jurisdictional arguments under the *Colorado River* abstention doctrine and the *Rooker-Feldman* doctrine, and finally, whether Plaintiff's claims in the Proposed Second Amended Complaint should be permitted or are futile.

1.   *Colorado River* Abstention is Not Warranted

South State Bank first asks the Court to decline subject matter jurisdiction because pending cases in the state court involve similar issues under the abstention doctrine set forth in *Colorado*

*River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976). There are certain extraordinary cases in which abstention because of parallel litigation in state courts is appropriate. But this case is not one of them.

The *Colorado River* abstention is a doctrine of judicial economy which derives from principles of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817 (citations omitted). Its purpose is "to avoid duplicative litigation." *Id.* Although the doctrine exists, the Supreme Court has cautioned federal courts that they should abstain only in the face of concurrent state proceedings in exceptional cases because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* Because "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996), abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813, (quoting *Cty. Of Allegheny v. Frank Mashuda* Co., 360 U.S. 185, 188–89 (1959)); see also *Gray v. Bush*, 628 F.3d 779, 783 (6th Cir. 2010). Thus, "[o]nly the 'clearest of justifications' will support abstention." *RSM Richter, Inc. v. Behr Am., Inc*., 729 F.3d 553, 557 (6th Cir. 2013) (quoting *Rouse v. DaimlerChrysler Corp*., 300 F.3d 711, 715 (6th Cir. 2002)).

"When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it

would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Co.,* 460 U.S. 1, 28 (1983).

Determining whether to abstain under *Colorado River* is a two-step inquiry. In the first step, the district court must determine that the federal and state actions are "parallel." *Romine v. Compuserve Corp.,* 160 F.3d 337, 339 (6th Cir.1998). If "the parities are substantially similar," and "the claims raised in both suits are predicated on the same allegations as to the same material facts," the actions "will come close enough to count as parallel." *Preferred Care of Del., Inc. v. VanArsdale,* 676 F. App'x 388, 393 (6th Cir. 2017) (quoting *Romine,* 160 F.3d at 340).

If the actions are not parallel, the inquiry is at an end, and abstention is not appropriate. If the actions are parallel, then under the second step the Court must apply certain factors identified in the *Colorado River* and *Moses H. Cone* decisions to determine whether extraordinary circumstances justifying abstention are present. When actions are parallel, the Court must then balance eight separate factors to determine whether abstention would be appropriate:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation . . .(4) the order in which jurisdiction was obtained . . . (5) whether the source of governing law is state or federal . . . (6) the adequacy of the state court action to protect the federal plaintiff's rights . . . (7) the relative progress of the state and federal proceedings . . . and (8) the presence or absence of concurrent jurisdiction . . .

*Romine,* 160 F.3d at 340–41. These factors are not a checklist, but considerations for the Court when using its discretion to abstain in a matter. *Beam Partners, LLC v. Atkins,* 340 F. Supp. 3d 627, 645 (E.D. Ky. 2018). Without the "clearest of justifications" that abstention is proper, the Court has a duty to exercise the jurisdiction granted to it by Congress. *RSM Richter,* 729 F.3d at

557; *Quackenbush.,* 517 U.S. at 716. Both steps of the *Colorado River* inquiry reveal that abstention is not appropriate.

First, this case is not parallel to the state court probate matters. "Suits are parallel if substantially the same parties litigate substantially the same issues." *Total Renal Care, Inc. v. Childers Oil Co.,* 743 F. Supp. 2d 609, 613–14 (E.D. Ky. 2010) citing *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir.1991). The presence of additional parties in one suit but not the other will not necessarily destroy parallelism, but parallel proceedings generally involve the same plaintiff against the same defendant. *Id.* citing, e.g., *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994 (11th Cir.2004); *Flint v. A.P. Desanno & Sons*, 234 F. Supp. 2d 506 (E.D. Pa. 2002).

PNC, the Wells Fargo Defendant, Ellis, and the Firm, are not parties to the state court probate matters. While some of the issues in the probate matters may overlap with questions about Plaintiff's claims against South State Bank, Plaintiff's claims against the other parties will not be determined in the state court probate matters and are not at issue in the probate matters. Plaintiff's claims here against South State Bank appear broader than her objections in the probate matters. Marilyn may be a party to the probate matter involving Senior's Trust Under Agreement, but it does not appear she is a party to the probate matters relating to Senior's Trust Under Will or Bernice's Trust Under Will.  Even if she were it does not appear Plaintiff's claim against her is before the state probate court.  Thus, abstention is not appropriate because the matters are not truly parallel.  *See E. On U.S. Services, Inc. v. QSC Painting, Inc.*, Case No. 08–54–JBC, 2008 WL 3982499 (E.D. Ky. Aug. 26, 2008) (finding that the cases were not parallel where the central issue in the federal case will need to be decided regardless of the outcome of the state court case); *PNC Bank, Nat'l Assoc. v. Person*, Case NO. 06–292–C, 2007 WL 1423744 (W.D. Ky. May 8, 2007)

(holding cases not parallel where resolution of the state court case will not dispose of all the claims presented in the federal case).

Even if this case were parallel with the state court probate matters, weighing the eight factors, abstention is not appropriate. The state probate court has assumed jurisdiction over the trusts, but the federal forum is equally convenient because Plaintiff alleges the parties are not citizens of Kentucky. Some of the issues presented here may have been before the probate court through Plaintiff's objections to South State Bank's proposed final distribution, accounting, and trustee's report in the probate matters involving Senior's Trust Under Will and Bernice's Trust Under Will. But, it is not clear that any of the issues are before the probate court in the matter relating to Senior's Trust Under Agreement. Even if some of the issues presented here are before the state probate court, that is an issue of preclusion law and there are other claims and parties not before the state probate court. The probate matters will thus not resolve all of Plaintiff's claims presented here. While the matters in probate court relating to Senior's Trust Under Will and Bernice's Trust Under Will began before this case, the matter in probate court relating to Senior's Trust Under Agreement started after this case was filed. Plaintiff's racketeering claim is governed by federal law and her other claims are governed by state law. On the whole, the Court does not find that these factors balance in favor of the extraordinary exercise of abstaining from this case. The Court therefore finds that the narrow exception to jurisdiction provided by *Colorado River* abstention does not apply to this matter.

### 2. *Rooker-Feldman* Doctrine is Inapplicable

Although South State raises the *Rooker-Feldman* doctrine, it paints with a broad brush and lacks specificity and analysis to help the Court determine whether *Rooker-Feldman* applies. But

the Court has an independent duty to ensure its jurisdiction and has undertaken the proper analysis. As addressed below, the *Rooker-Feldman* doctrine does not apply.

### a. The Rooker-Feldman Doctrine

Through its decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court established the general rule that district courts lack jurisdiction to review state court judgments. Under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). This doctrine, however, does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005).[6] "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"[7] *Id.* citing *GASH Assocs. v. Rosemont,* 995 F.2d 726, 728 (7th Cir. 1993); accord *Noel v. Hall,* 341 F.3d 1148, 1163–1164 (9th Cir. 2003).

The *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. This doctrine applies to both final judgments and interlocutory orders. *See Pieper v. Am. Arbitration Ass'n*, 336 F.3d 458, 462 (6th Cir. 2003) ("We reject this argument and join with the majority of circuits that have concluded that the *Rooker-Feldman* doctrine does apply to

---

[6] "In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court." *Exxon Mobil.*, 544 U.S. at 293.

interlocutory orders and to orders of lower state courts.  First, like other federal courts of appeals, we find it difficult to believe that lower federal courts are prohibited from reviewing final state-court judgments, but yet are somehow permitted to review interlocutory decisions.").

When applying this doctrine, the Sixth Circuit looks to the source of plaintiff's injury.  "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction.   If there is some other source of injury . . . then the plaintiff asserts an independent claim." *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) (citation omitted). When a plaintiff complains of "some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim" that does not implicate *Rooker–Feldman*. *McCormick v. Braverman*, 451 F.3d 382, 392–93 (6th Cir. 2006). For claims alleging some other source of injury, "the Supreme Court has instructed that preclusion law is the appropriate solution." *Id*. at 392.

 "A court cannot determine the source of the injury 'without reference to [the plaintiff's] request for relief.'" *Id*. citing *Evans v. Cordray*, 424 Fed. App'x 537, 538 (6th Cir. 2011). Finally, even if not raised by the parties, this doctrine is jurisdictional and must be considered by the Court sua sponte.  *Crawford v. Countrywide Home Loans, Inc*., 647 F.3d 642, 646 (7th Cir. 2011).

### b.   The Source of Plaintiff's Injury

Neither South State Bank nor Plaintiff address the source of Plaintiff's injury.  But the Plaintiff's requests for relief in her Proposed Second Amended Complaint show that the Probate Court's overruling of her objections in the in probate matters about Senior's Trust Under Will and Bernice's Trust Under Will are not the source of her injury.  While Plaintiff disagrees with these rulings, she does not claim her injury was caused by the rulings.  Instead, the source of her alleged injuries are caused by the actions of Defendants in this case (mainly the actions of the trustees in

permitting what Plaintiff describes as encroachments on the principal of the trusts), not the probate court.

For instance, in Count 1 Plaintiff alleges racketeering. [DE 90-1 at 1298-1303]. Plaintiff claims that from "1994 through to Junior's death in late 2018, Junior, Marilyn, Savannah, South State, Ellis, the Firm, Wells Fargo, Wachovia, and First Union acted as an association in fact to commit criminal acts, including to commit mail fraud, wire fraud, and bank fraud . . ." Eitel claims that she "relied on the statements and omission to her detriment by not objecting to the improper conduct intentionally hidden from her by the Enterprise Defendants." [DE 90-1 at 1302]. She claims annual and monthly statements sent through the mail intentionally omitted material information. [*Id*]. She claims the "Final Issue Trust Termination accounting mailed by Savannah intentionally omit[ed] material information . . ." [*Id*.] Plaintiff also claims these parties, except Marilyn, "made phone calls and emails to [Plaintiff] misleading her as to the Enterprise Defendant's conduct . . ." [*Id*.]. She claims these actions constitute mail fraud and wire fraud in violation of 18 U.S.C. 1341, 1344, and 1346. While Plaintiff may be raising some of the same issues or conduct as her objection(s) in the probate court, the source of her injury is actions carried out by the various Defendant-actors in this count, not the orders of the probate court.

In Count 2, Plaintiff alleges fraud. Plaintiff alleges that invasions of trust principal began in 1994. [DE 90-1 at 1303]. She claims the parties to this claim knew that these invasions of principal contradicted the terms of the trusts. [*Id.* at 1304]. She claims the omission of this information caused Plaintiff to trust that information provided to her was complete and to believe the trusts were being administered according to their terms. [*Id*.]. Again, the source of this alleged injury is the actions of Defendants.

14

Similarly the other counts in the Proposed Second Amended Complaint allege the conduct of the various Defendants as the source of injury, not the orders of the probate court.  In Count 10, Plaintiff alleges abuse of process against South State Bank. [DE 90-1 at 1312].  Plaintiff alleges that "South States is misusing the probate action to accomplish a purpose other than which it was designed" "seeking exoneration which is neither contemplated or available under KRS 386B.4-140 and such conduct constitutes willful acts that are not proper in the conduct of the proceeding." [*Id.*].  Under Kentucky law, "the focus of such a claim is whether there was a willful act in the use of the process not proper in the regular conduct of the proceeding." *Bardstown Capital Corp. v. Seiller Waterman, LLC*, No. 2018-CA-001886-MR, 2020 WL 3108238, at *14 (Ky. Ct. App. June 12, 2020).  As with the other claims, the source of Plaintiff's injury is not the orders or judgments of the probate court, but allegedly willful conduct of South State Bank.  *McCormick*, 451 F.3d at 392 ("In Count IV, Plaintiff claims that Defendants Braverman and McCormick committed an abuse of process in the divorce proceedings between Mary and Edward's estate . . . [n]one of these claims assert an injury caused by the state court judgments; Plaintiff does not claim that the state court judgments themselves are unconstitutional or in violation of federal law. Instead, Plaintiff asserts *independent claims* that those state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means, and that a state statute is vague and overbroad. Certainly, these independent claims may deny a legal conclusion of the state court . . . however, this fact does not lead to a divestment of subject matter jurisdiction in the federal courts. Instead, the Supreme Court has instructed that preclusion law is the appropriate solution for these independent claims.").

As mentioned above, neither Plaintiff nor South State Bank address the source of Plaintiff's injury in arguing about whether the *Rooker-Feldman* doctrine applies.  South State Bank mixes

the abstention doctrine under *Colorado River* with the *Rooker-Feldman* doctrine and paints with a broad brush, arguing that Plaintiff's entire lawsuit seeks to overturn the decisions of the probate court. [DE 92 at 1360]. But the decisions of the probate court came after Plaintiff filed this lawsuit was filed and the Supreme Court has instructed that even if "there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court." *Exxon Mobil Corp.*, 544 U.S. at 292. Plaintiff argues that the scope of the probate matters are narrow and do not apply to acts by the trustees before July 15, 2014 per KRS 386B.11-404.[8] [DE 99 at 1486]. Although couched under the *Rooker-Feldman* doctrine, what the Plaintiff and South State Bank are really arguing about is the effect of the probate proceedings. This is an issue under the doctrine of preclusion. For claims like Plaintiff's, which as discussed above assert a source of injury independent of the state court's judgment itself, "the Supreme Court has instructed that preclusion law is the appropriate solution." *Id.* at 293. But neither party addressed preclusion or even identified it as an issue and it would not be appropriate to do so at this stage of the proceedings.

---

[8] Plaintiff argues that the probate matters do not apply to any actions taken before 2014. [DE 90-1 at 1275]. Plaintiff cites the language of KRS 386B.11-040 which states, "[a]n act done before July 15, 2014, is not affected by this chapter." The meaning of this language was explained by the Kentucky Court of Appeals in *Middleton v. PNC*:

> The Middletons contend that the Trustees actions should be evaluated in light of the recently-enacted Uniform Trust Code. KRS 386B.1–010 *et seq.* They focus on KRS 386B.11–040 (1)(a), which provides that Code "applies to all trusts created before, on, or after July 15, 2014," and subsection (1)(c), which provides that the Code applies to "judicial proceedings concerning trusts commenced before July 15, 2014 . . ." However, this provision is qualified by subsection (1)(e), which specifies that "[a]n act done before July 15, 2014, is not affected by this chapter." Although these sections seem contradictory, we find that they can be reconciled in context. While the procedural provisions of the Uniform Trust Code apply to all trusts, the Code does not retroactively impose new standards for trustees' acts prior to the statute's effective date. Since all of the conduct at issue involved the Trustee's acts between 2001 and 2007, we conclude that any substantive provisions of the Code do not apply.

*Middleton v. PNC Bank, NA*, No. 2012-CA-002142-MR, 2014 WL 5510872, at *3 (Ky. Ct. App. Oct. 31, 2014).

In short, the *Rooker-Feldman* doctrine does not apply to bar subject-matter jurisdiction over Plaintiff's claims.

### 3.   Amendment under Rule 15 and Motions to Dismiss

Next, the Court must determine whether to permit Plaintiff's amendment under Rule 15. "When there are pending before the court both a dispositive motion and a motion to amend the complaint, the court must first address the motion to amend complaint." *Gallaher & Assocs., Inc. v. Emerald TC, LLC*, No. 3:08-CV-459, 2010 WL 670078, at *1 (E.D. Tenn. Feb. 19, 2010) (citing *Ellison v. Ford Motor Co.,* 847 F.2d 297, 300 (6th Cir.1988)). Federal Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of the pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

"In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998). ).   "The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995)  (citing *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).

If the court grants a motion to amend, "the original pleading no longer performs any function in the case." *Clark v. Johnston*, 413 Fed. App'x 804, 811 (6th Cir. 2011)  (internal quotation marks and citation omitted). Thus, "when the court grants leave to amend the complaint,

a motion to dismiss the original complaint will be denied as moot if the amended complaint adequately addresses the grounds for dismissal." *Stepp v. Alibaba.com, Inc.*, No. 3:16-CV-00389-CRS, 2016 WL 5844097, at *2 (W.D. Ky. Oct. 4, 2016).

Plaintiff's Motion to Amend was filed before any discovery, before entry of a scheduling order, and after obtaining counsel. Even though motions to dismiss were filed in response to her pro se complaint, she does not present her Proposed Second Amended Complaint so late as to cause undue delay or undue prejudice, particularly because the COVID-19 pandemic arose shortly after Plaintiff sued. Nor is there any evidence of bad faith. That said, before leave may be granted, the Court must conduct a cursory review of the newly presented allegations and issues and deny leave if allowing an "amendment would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420 (6th Cir. 2000).

To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett*, 561 F.3d at 488 (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

The Court will address each claim in turn.

> a. *Racketeering under 18 U.S.C. 1964(c)(South State, Wells Fargo, Ellis, the Firm, and Junior, and Marilyn).*

In its Motions to Dismiss [DE 23, DE 44], South State Bank argued that Plaintiff failed clarify under which provision of 18 U.S.C. § 1962 her claim falls and analyzed the claim under under 18 U.S.C. § 1962(a), (b), (c), or (d). [DE 44 at 953].  In the Motion to Amend and Proposed Second Amended Complaint, Plaintiff asserts the claim is under 18 U.S.C. § 1964(c). To state a RICO claim under 18 U.S.C. § 1964(c), the plaintiff must plead these elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that causes the plaintiff to incur damages. *In re: Classicstar Mare Lease Litigation*, 727 F.3d 473, 483-84 (6th Cir. 2013).

South State Bank argues that Plaintiff's pleading fails because it does not allege the first element (conduct) of South State Bank's fraudulent omissions evidencing mail fraud and wire fraud with the requisite particularity as required by Rule 9(b). [DE 92 at 1365].  Plaintiff alleges that the "Enterprise Defendants" "made and caused others to make materially false statements and omissions" through annual statements, monthly statements, and the trust termination accounting that omitted material information about the principal encroachments and that they made "phone

calls and emails to Plaintiff misleading her as to the Enterprise Defendant's conduct." [DE 90-1 at 1302]. Plaintiff argues she does not have to allege the time and place of such omissions because South State Bank and other trustees withheld the information. [DE 99 at 1503-04].

Rule 9(b)'s pleading requirements are relaxed because "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007). Thus, "[w]here the fraud consists of omissions on the part of the defendants, the plaintiff may find alternative ways to plead the particular circumstances of the fraud. For example, a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act." *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987) (internal quotation marks and citation omitted); *see also Allstate Indem. Co. v. Dixon*, 304 F.R.D. 580, 584 (W.D. Mo. 2015); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012).

Considering Rule 9(b)'s relaxed pleading requirements for fraud-by-omission claims and the inherent difficulties in asserting the absence of a fact, Plaintiffs' allegations sufficiently provide a framework for relevant discovery and alert Defendants "'as to the particulars of their alleged misconduct'" so that they may respond to the complaint. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *Bledsoe*, 501 F.3d at 503). Plaintiff has detailed the allegedly fraudulent omission, noted the specific Defendants involved in the alleged scheme, explained why the omissions were fraudulent, and identified the injury caused by those omissions. Only Defendants possess additional relevant facts, and discovery has not begun. *See Michaels*, 848 F.2d at 680. At this stage of the proceedings and construing the Proposed Second Amended Complaint

20

in the light most favorable to the Plaintiff, she has sufficiently pleaded fraud by omission to satisfy Rule 9(b).

In addition, South State Bank argues that Plaintiff fails to sufficiently allege the second element of her RICO claim, enterprise. [DE 92 at 1365].  South State Bank asserts Plaintiff must have alleged some kind of structure organized the association-in-fact she alleges existed.  [*Id.*] South State Bank cites *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 983 (N.D. Ohio 2008). But *Thermodyn* analyzed the issue of whether the Plaintiff there had established an association-in-fact for purposes of summary judgment and did not analyze the allegations for purposes of Rule 12(b)(6). *Id.* at 981-83. For purposes of a motion to dismiss, Plaintiff has sufficiently pled an enterprise. [DE 90-1 at 1299, ¶¶ 176-77].

> b.  *Fraud against PNC Bank, Wells Fargo, South State, Junior, Marilyn, Ellis, and the Firm [DE 90-1 at 1303].*

For the reasons discussed above for Plaintiff's RICO claim, Plaintiff's fraud by omission claim is sufficiently pled.  The Court will permit her to amend this claim.

> c.  *Breach of fiduciary duty as trustee and income beneficiary of the Issue Trust against PNC, Wells Fargo, South State, Ellis, the Firm, Junior, and Marilyn as power of attorney for junior [DE 90-1 at 1304-05].*

Ellis and the Firm argues that Plaintiff's breach of fiduciary duty claim against them fails because "the terms of the trusts allowed significant discretion to make principal distributions to Paul T. Eitel, Jr. for more than just his health'" and cites KRS 386B.8-010 for the proposition that "[a] trustee does not breach its fiduciary duty where it acts consistent with the terms of the trust." [DE 95 at 1447]. South State Bank also makes this argument. [DE 92 at 1368]. But whether the trustee acted consistent with the trust is an issue of fact not appropriate at this stage of the proceedings.  Defendants argue several other issues not properly resolved on a motion to amend a

pleading or motion to dismiss.   For these reasons, Plaintiff's claim is not futile and the Court will

permit her to amend.

> d.   *Professional negligence against Ellis and the Firm [DE 90-1 at 1307].*

In response to Plaintiff's Motion to Amend, Ellis, and the Firm did not argue that Plaintiff's

professional negligence claim is futile for purposes of a motion to dismiss.  Upon a cursory review

of this claim, and taking all allegations in a light most favorable to Plaintiff, the Court will permit

this amended claim.

> e.   *Breach of duty of good faith and fair dealing against Junior, Marilyn acting under*
>       *power of attorney for Junior, PNC Bank, Wells Fargo, and South State [DE 90-1*
>       *at 1308] and Negligence (PNC Bank, Wells Fargo, South State, and Advisory)[DE*
>       *90-1 at 1311].*

South State Bank argues that Plaintiff's breach of duty of good faith and fair dealing claim

and negligence claim are duplicative of her breach of fiduciary duty claim.  [DE 92 1369-70]. If

these claims are duplicative, that is not an issue for a motion to dismiss, as a party may plead

claims alternatively.  Thus, the Court will permit Plaintiff to amend these claims.

> f.   *Intentional interference with contract against Marilyn individually [DE 90-1 at*
>       *1309].*

In Plaintiff's previous complaints, she claimed intentional interference with inheritance

against all the Defendants. Now in the Proposed Second Amended Complaint she asserts in Count

VI a claim for intentional interference with a contract against Marilyn. [DE 09-1 at 1309]. Marilyn

argues this aims to get around Kentucky not recognizing the tort of intentional interference with

inheritance.  In an unpublished opinion, the Kentucky Court of Appeals held that Kentucky does

not recognize the cause of action known as tortious interference with inheritance or gift, or

wrongful interference with devise. *Dickson v. Shook*, 2019 WL 1412497 (Ky. App. 2019).  The

Restatement Second, Torts § 774B defines the tort of intentional interference with an inheritance

or gift as: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." § 1572. Intentional interference with inheritance, 2 Ky. Prac. Prob. Prac. & Proc § 1572.  Plaintiff argues that *Dickson* does not apply, because that decision involved a devise, not a trust, and that a trust is a contract, for purposes of the claim of intentional interreference with contract.

Unlike tortious interference with inheritance, Kentucky recognizes the tort of intentional interference with a contract and Marylin does not address whether the Plaintiff has properly alleged this claim.  To maintain a tortious interference with contract claim, a plaintiff must prove these elements (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) that the defendant intended to cause a breach; (4) that the defendant's actions did indeed cause a breach; (5) that damages resulted to the plaintiff, and (6) that the defendant had no privilege or justification to excuse its conduct. *Snow Pallet, Inc. v. Monticello Banking Co*., 367 S.W.3d, 1, 5–6 (Ky. App. 2012); *Louisville Outlet Shoppes, LLC v. Paragon Outlet Partners, LLC*, No. 2014-CA-001699-MR, 2016 WL 929740, at *2 (Ky. Ct. App. Mar. 11, 2016).  Plaintiff has sufficiently alleged these elements of the claim of intentional interference with contract against Marilyn for purposes of a motion to dismiss. Nor does *Dickson* apply to this claim as that case involved a devise, and did not involve a claim for tortious interference with contact, a tort recognized in Kentucky. This claim is thus not futile. The Court will permit Plaintiff to amend.

g. *Constructive trust against Marilyn individually [DE 90-1 at 1310].*

Marilyn argues that "constructive trust" is an equitable remedy, not a cause of action, and Plaintiff should have put it in the "prayer for relief."   But Marilyn cites not law or authority for her argument.  Plaintiff cites cases Kentucky that describe constructive trusts as a remedy, but that

also describe constructive trusts as claims or causes of action. *See, e.g.*, *Terrill v. Terrill*, 217 S.W.3d 858, 861 (Ky. App. 2006) ("William brings his claim alleging a constructive trust . . ."); *Sharp v. Sharp*, 2011 Ky. App. Unpub. LEXIS 697 (Ky. App. September 23, 2011) (seeking to amend complaint to assert a cause of action for constructive trust). Under Kentucky law, "a constructive trust  arises when a person entitled to property is under the equitable duty to convey it to another because he would be unjustly enriched if he were permitted to retain it." *Patel v. Tuttle Properties*, LLC, 392 S.W.3d 384, 387 (Ky. 2013).  Marilyn does not argue that Plaintiff has not made allegations, that if taken as true, would not entitle her to a constructive trust.  Marilyn has not met her burden in asserting this claim to be futile.  Thus, it is sufficient at this stage of the proceedings that the Plaintiff may pursue a claim for constructive trust.

> h.  *Abuse of process against South State [DE 90-1 at 1312].*

Plaintiff alleges that "South States is misusing the probate action to accomplish a purpose other than which it was designed" "seeking exoneration which is neither contemplated or available under KRS 386B.4-140 and such conduct constitutes willful acts that are not proper in the conduct of the proceeding." [*Id*.].  Under Kentucky law, "the focus of such a claim is whether there was a willful act in the use of the process not proper in the regular conduct of the proceeding." *Bardstown Capital Corp. v. Seiller Waterman, LLC*, No. 2018-CA-001886-MR, 2020 WL 3108238, at *14 (Ky. Ct. App. June 12, 2020).  South State Bank argues that Plaintiff's abuse of process claim fails because Plaintiff cannot prove that South State Bank "undertook some act in the use of the process not proper in the regular conduct of the proceedings."  [DE 92 at 1371]. The probate matters involving Senior's Trust Under Will and Bernice's Trust Under Will are on appeal at the Jefferson Circuit Court, as is the probate matter involving Senior's Trust Under Agreement.  South State Bank does not argue that Plaintiff has failed to plead the elements of this claim.  Whether Plaintiff

can ultimately prove this claim is not an appropriate issue on a motion to dismiss. Thus, the Court will permit the amended claim.

### i.   *The Wells Fargo Defendants and Statute-of-Limitations Arguments*

The Proposed Second Amended Complaint drops Wells Fargo & Company, Wachovia Bank, N.A., and First Union Corporation as parties and adds Wells Fargo Bank, N.A.  The Wells Fargo Defendants argue that the Proposed Second Amended Complaint would still be futile against Wells Fargo Bank, N.A. because that entity did not manage the trusts after 2003 or 2004 and the statute of limitations has run. [DE 94 at 1442].  The Wells Fargo Defendants argue that RICO claim's statute of limitations is four years and runs from the date on which the plaintiff "should have known of his alleged injuries" citing *Osborn v. Griffin*, 50 F. Supp. 3d 772, 806-07 (E.D. Ky. 2014), aff'd, 865 F.3d 417 (6th Cir. 2017).  But the statute of limitations on the plaintiffs' claims in *Osborn* involved questions of fact that the court there decided on summary judgment. *Id*.

Dismissal of a claim under Rule 12(b)(6) on grounds that it is barred by a limitations period is warranted only if "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp*., 676 F.3d 542, 547 (6th Cir. 2012) (emphasis added).  Further, "the complaint must be liberally construed in determining whether the complaint is time-barred." *Id.*  In other words, it must be "apparent from the face of the complaint that the limit for bringing the claim[s] has passed." *Bishop v. Lucent Techs., Inc*., 520 F.3d 516, 520 (6th Cir. 2008) (alteration in original)(quoting *Hoover v. Langston Equip. Assocs., Inc*., 958 F.2d 742, 744 (6th Cir. 1992)).  Here, construing the Proposed Second Amended Complaint liberally, there are questions of fact that would prevent this Court from determining, at this stage of the proceedings, that Plaintiff's RICO or other tort claims are time-barred based on the fact of Plaintiff's Proposed Second Amended Complaint.  Thus, these claims are not futile as a result of the statute of

limitations for purposes of a motion to dismiss and the Court will permit Plaintiff to file the amendment.

### 4.        Diversity Jurisdiction

Finally, the Court raises sua sponte the issue of diversity jurisdiction based on the Court's inherent power and duty to ensure that the requirements for subject matter jurisdiction are satisfied in all cases.  *See Klepsky v. United Parcel Serv.*, 489 F.3d 264, 268 (6th Cir. 2007).  Although Plaintiff's Proposed Second Amended Complaint alleges federal-question jurisdiction under 28 U.S.C. § 1331 as a result of the RICO claim, the Proposed Second Amended Complaint also alleges diversity jurisdiction under 28 U.S.C. § 1332, alleging that the parties are of diverse citizenship.[9] Under the diversity jurisdiction statute, 28 U.S.C. § 1332(c)(1), a corporation is a citizen of its state of incorporation and the state where it has its principal place of business.  A limited liability company is a citizen of the state of citizenship of each of its members. *Homfeld II, LLC v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002); see *also Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007) ("For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members.").  When a party invokes diversity jurisdiction with a limited liability company as a party, the court needs to know the citizenship of each member of the company.  And because a member of a limited liability company may itself have many members—and thus may itself have multiple citizenships—the federal court needs to know the citizenship of each "sub-member" as well. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

---

[9] Should Plaintiff's RICO claim be dismissed before trial, the Court would need to ensure its jurisdiction. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp*., 89 F.3d 1244, 1254–55 (6th Cir. 1996); *see also* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it ha[d] original jurisdiction").

Plaintiff's Proposed Second Amended Complaint fails to properly allege the citizenship for diversity purposes of PNC Bank, N.A., Wells Fargo Bank, N.A., South State Bank, N.A., and Ellis, Painter, Ratterree & Adams LLC.  [DE 90-1 at 1246-47]. 28 U.S.C. § 1653 allows parties to amend defective jurisdictional allegations. *Varsity Brands, Inc. vs. Star Athletica, LLC,* 799 F.3d 468 (6th Cir. 2015).  Under the statute, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. The Court will permit the Plaintiff leave to file the Proposed Second Amended Complaint curing the defects set forth above within 20 days.  This ruling does not permit the Plaintiff to amend any of the other allegations in the Proposed Second Amended Complaint; only those addressing the citizenship of these parties.

### III.     CONCLUSION

For the reasons above, the Court **ORDERS** as follows:

1.  Plaintiff Mary Eitel's Motion to Amend Complaint [DE 90] is **GRANTED** with leave to file the Proposed Second Amended Complaint and curing the jurisdictional defects set forth above **within 20 days** of the entry of this Order;

2.  Defendant PNC Bank, N.A's Motion to Dismiss [DE 43] is **DENIED** as moot**;**

3.  Defendant South State Bank, N.A.'s Motions to Dismiss [DE 23, DE 44] are **DENIED** as moot;

4.  Defendants Wells Fargo & Company, Wachovia Bank, N.A., and First Union Corporation's Motions to Dismiss [DE 37, DE 41] are **DENIED** as moot;

5.  Defendant Michael E. Cofield's Motion to Dismiss [DE 45] is **DENIED** as moot;

6.  The Court will issue a separate litigation planning order pursuant to Fed. R. Civ. P. 16 and 26.

Rebecca Grady Jennings, District Judge

United States District Court

November 24, 2020

28