UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARY EITEL                                                                    Plaintiff

v.                                                          Civil Action No. 3:20-cv-12-RGJ

PNC BANK, N.A. ET AL                                                       Defendants

## MEMORANDUM OPINION & ORDER

Defendants Wiley Ellis ("Ellis"), individually, and Ellis, Painter, Ratteree and Adams, LLP ("EPRA") move to dismiss Plaintiff Mary Eitel's ("Plaintiff") Second Amended Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). [DE 110]. The motion is fully briefed. [DE 116, DE 117]. Defendant South State Advisory, Inc. ("South State Advisory") also moves to dismiss Plaintiff's Second Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2) and for insufficient service of process under Rule 12(b)(5). [DE 126]. This motion is also fully briefed. [DE 135, DE 137]. For the reasons below, Ellis's and EPRA's Motion to Dismiss [DE 110] is **GRANTED**[1] and South State Advisory's Motion to Dismiss **[DE 116]** is **DENIED**.

## I. DISCUSSION

### A. Ellis's and EPRA's Motion to Dismiss for Lack of Personal Jurisdiction [DE 110].

1. Background

Plaintiff alleges that Ellis, EPRA, South State Advisory, and other defendants not at issue in these motions, denied her rightful benefits in three trusts created in Kentucky by her paternal

---

[1] Ellis and EPRA have also moved for summary judgment [DE 195]. Because the Court lacks personal jurisdiction over Ellis and EPRA, they will be dismissed as parties, and the Court need not address the motion for summary judgment [DE 195], which is moot. As a result, the Court also need not consider Eitel's motion to deny and alternatively defer consideration of their motion for summary judgment. [DE 206].

grandparents. [DE 104]. The Court has previously summarized some of the allegations in Plaintiff's complaint. [*See* DE 101]. The chief claim is that the various trustees permitted encroachments of the principal of the three trusts (the "Issue Trusts") by Plaintiff's father, Paul T. Eitel, Jr. ("Junior"), that were unnecessary or improper and designed to transfer money from the Issue Trusts to Junior's wife, Marylin, and to fund a trust for Marilyn. [DE 104 at 1595, 1589-1600].

The Second Amended Complaint alleges that Ellis and EPRA are citizens residing outside the forum. [DE 104 at 1593]. Ellis, an attorney with EPRA, is a citizen of Georgia. [DE 104 at 1593; DE 110 at 1742]. EPRA, a law firm, is a citizen of Georgia and South Carolina. [DE 104 at 1593; DE 110 at 1742-43]. Plaintiff does not reside in Kentucky, although she did at various times in the past. [DE 104 at 1590].

As to Ellis and EPRA, Plaintiff alleges claims of Racketeering, Fraud, Breach of Fiduciary Duty, and Professional Negligence. [DE 104]. Plaintiff alleges that Ellis, on behalf of EPRA and Savannah, acted as an agent for the Issue Trusts and acted as an attorney for the Issue Trusts, and communicated with her on occasions in that capacity:

> Defendant Wiley Ellis ("Ellis"), an individual, is domiciled in Georgia and is a citizen of Georgia. Ellis was an executive officer of Savannah and also a partner in the law firm Ellis, Painter, Ratterree & Adams LLP. Ellis conducted business in Kentucky from 2003 forward and mailed statements to Plaintiff and Paul III who lived and live in Kentucky.
>
> . . .
>
> [I]n 2003, Plaintiff communicated via email, telephone, and in-person with Defendant Ellis on multiple occasions, in his capacity as both agent for Issue Trusts' Trustee, Savannah, but also as attorney for the Issue Trusts as retained by himself, wherein Ellis outright refused to communicate any information to Plaintiff regarding the necessity or requirement for principal encroachments by Junior. Ellis, on behalf of the Firm and Savannah continued to use the phone lines, email, and United States mail to continue to materially omit and mislead Plaintiff in Kentucky on the law and the Issue Trusts and their management and administration which

2

South State continued through to the present on routine basis in furtherance of an enterprise to defraud Plaintiff in favor of South State, Savannah, Ellis, the Firm, Junior, and Marilyn.

[DE 104 at 1593, 1610].

Plaintiff alleges in her Second Amended Complaint that EPRA performed work for the

Issue Trusts:

> Defendant Ellis, Painter, Ratterree & Adams LLP (the "Firm") is a Georgia limited liability partnership law firm, with its principal place of business located in Savannah, Georgia. The Firm is a citizen of Georgia and South Carolina, where its partners are domiciled and are citizens as stated below. *See* https://epra-law.com/attorneys/; *see also* South Carolina Secretary of State filing and property records from Beaufort County, South Carolina and Chatham County, Georgia, identifying where the partners reside with the intent to make their home, attached collectively as Exhibit J-3 and incorporated by reference. The Firm's partners include: Sarah B. Akins (domiciled and a citizen of South Carolina), Jim Austin (domiciled and a citizen of Georgia), Dana F. Braun (domiciled and a citizen of Georgia), Quentin Marlin (domiciled and a citizen of Georgia), Tracy O'Connell (domiciled and a citizen of Georgia), Jason C. Pedigo (domiciled and a citizen of Georgia), and Philip Thompson (domiciled and a citizen of Georgia). The Firm conducted business in Kentucky by performing work for the Issue Trusts, which were formed in Kentucky and whose beneficiaries lived and live in Kentucky.

[DE 104 at 1593-94].

Plaintiff asserts that because the Issue Trusts were formed in Kentucky and those beneficiaries lived and live in Kentucky, EPRA conducted business in Kentucky.

Defendants Ellis and EPRA now move to dismiss asserting that this Court lacks personal jurisdiction over these defendants. [DE 110].

2. Standard

Presented with a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, the Court may (1) rule on the motion based on the pleadings and affidavits alone, (2) permit discovery on the motion, or (3) hold an evidentiary hearing on the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (citing *Serras v. First Tenn. Nat'l Ass'n*, 875

3

F.2d 1212, 1214 (6th Cir. 1989)).  No party has requested an evidentiary hearing or suggested a need for discovery on the personal jurisdiction issue other than Plaintiff's alternative request made in passing, so the Court will rule based on the pleadings.

Once a defendant challenges personal jurisdiction, the burden is on the plaintiff to show that jurisdiction is proper.  *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). To do so, the plaintiff  "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts" showing the Court's jurisdiction.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  When, as here, the Court resolves a Rule 12(b)(2) motion solely on written submissions, the plaintiff's burden is "relatively slight, and the plaintiff must make only a *prima facie* showing personal jurisdiction exists to defeat dismissal."  *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Theunissen*, 935 F.2d at 1458; *AM. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)) (internal quotation marks omitted). The plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction."  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (internal quotation marks omitted).  In resolving a motion to dismiss under Rule 12(b)(2), the Court must view the pleadings and affidavits in a light most favorable to the plaintiff and should not "weigh the controverting assertions of the party seeking dismissal."  *Air Prod.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459) (internal quotation marks omitted).

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken*

*v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction can either be specific or general depending on the type of minimum contacts in a case. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir.1994). General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant. *Kerry Steel, Inc. v. Paragon Indus., Inc*., 106 F.3d 147, 149 (6th Cir.1997). Specific jurisdiction, on the other hand, grants jurisdiction only when a claim arises out of or relates to a defendant's contacts in the forum state. *Id*.

For specific jurisdiction to exist in a diversity actions, federal courts must look to the law of the forum state to determine the personal jurisdiction over parties, subject to constitutional due process requirements. *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 909 (6th Cir. 1988). When a federal court's subject matter jurisdiction stems from a federal question, personal jurisdiction over a defendant exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)) (internal quotation marks omitted).

Kentucky's long-arm statute is codified in KRS 454.210. Under current Kentucky law, to exercise personal jurisdiction over non-resident defendants, courts must follow a two-step analysis which first determines whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." *Caesars Riverboat Casino, LLC v. Beach,* 336 S.W.3d 51, 567 (Ky. 2011). Kentucky's Supreme Court further held that the phrase "arising from" in the long-arm statute should be interpreted to mean that the "cause of action must have originated from, or came into being, as a result of" the defendant's activities

5

which fit into the categories listed in KRS 454.210. *Id.* at 58. Thus, even when the defendant's conduct falls within one of the enumerated categories in the long-arm statute, the plaintiff's claim still must *arise from* that conduct for personal jurisdiction to exist. *Id.* at 58-59 ("[T]he wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction."). Only when a court has determined that the defendant's activities fit into one of the nine categories listed in KRS 454.210, should the court proceed to the second step of determining whether the exercise of personal jurisdiction would offend the defendant's federal due process rights. *Id.* at 57; *see, e.g.*, *KFC Corp. v. Wagstaff,* 502 B.R. 484, 495 (W.D. Ky. 2013*)* (applying the two-step analysis described in *Caesars Riverboat Casino* by first determining if the cause of action "arises from" conduct or activity fitting into one of the nine enumerated activities in KRS 454.210, and secondly considering whether exercising personal jurisdiction was proper under a federal due process analysis).

If, however, the defendant's activities do not fit into one of the statute's enumerated categories, "then *in personam* jurisdiction may not be exercised," and the inquiry ends. *Caesars Riverboat Casino*, 336 S.W. 3d at 57; *see, e.g.*, *Luvata Electrofin, Inc. v. Metal Processing Intern., LP*, 2013 WL 3961226, at *3 (W.D. Ky. Sept. 10, 2012) (explaining that the court will turn to the constitutional due process inquiry only if it first finds that it can exercise personal jurisdiction over defendants under Kentucky's long-arm statute); *Bondurant v. St. Thomas Hosp.*, 366 S.W. 3d 481, 486 (Ky. App. 2011) (citing *Caesars Riverboat Casino*, 336 S.W.3d at 57, in support of court's decision that because personal jurisdiction could not be exercised under KRS 454.210, no analysis of federal due process requirements for exercise of personal jurisdiction was necessary). Thus, there may be situations in which the defendant's activities or contacts with the forum state may be

enough to satisfy jurisdiction for purposes of constitutional due process, but still not be permitted by Kentucky's long-arm statute. *Citizens Nat. Bank of Paintsville v. MCNB Bank and Tr. Co.*, 2013 WL 3894996, at *2 (E.D. Ky. July 26, 2013).

3. Analysis

The parties do not assert that this Court has general jurisdiction over Ellis or EPRA. Thus, the Court's analysis is limited to whether it has specific personal jurisdiction over Ellis or EPRA. The parties agree that Ellis and EPRA are not citizens of the forum state, but dispute Plaintiff's characterizations, stating, "the Defendants do not conduct or solicit business, engage in any course of conduct, or derive substantial revenue from services rendered in the Commonwealth of Kentucky." [DE 110 at 1745]. Ellis and EPRA "argue that they "did not engage in activities in the Commonwealth of Kentucky . . . thus, the only method in which to obtain personal jurisdiction over" them "is via Kentucky's long-arm statute, which . . . cannot be met in this case." [DE 110 at 1743].

a. *Kentucky's Long-Arm Statute*

To determine whether Kentucky's long-arm statute is satisfied, the Court must analyze whether the conduct alleged against the party at issue arises from one of the nine enumerated categories of conduct set forth the in the long-arm statute. This analysis focuses on "the relationship among the defendant, the forum, and the litigation," not the harm suffered by Plaintiff. *H.E.B., LLC v. Jackson Walker, L.L.P.*, 587 S.W.3d 333, 339 (Ky. App. 2019) (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). Kentucky's long-arm statute (KRS § 454.210) provides in relevant part:

> (1) As used in this section, "person" includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who is a nonresident of this Commonwealth.

(2) (a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

   1. Transacting any business in this Commonwealth;

. . .

   4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

. . . .

(b) When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.

Plaintiff argues that her allegations in the Second Amended Complaint satisfy the first enumerated category, "[t]ransacting any business," in Kentucky.  [DE 116 at 1870].  She provides an unsworn declaration in support.  [DE 116-2].  Ellis and EPRA, on the other hand, invoke the fourth category, "[c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business . . . provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth,"  and assert that Plaintiff's allegations do not satisfy this fourth category.  [DE 110 at 1745].

Plaintiff alleges that Ellis conducted business in Kentucky from 2003 forward and mailed statements to Plaintiff who lived in Kentucky, and that EPRA "conducted business in Kentucky by performing work for the Issue Trusts."  [DE 104 at 1593, ¶ 14-15].  Ellis and EPRA assert that these vague allegations are false because "the Defendants do not conduct or solicit business, engage in any course of conduct, or derive substantial revenue from services rendered in the

Commonwealth of Kentucky.  Thus, the statutory provision of Kentucky's long-arm statute have not been satisfied."  [DE 110 at 1745].

Ellis and EPRA also argue that Plaintiff attempts to "blend Ellis and EPRA into other named Defendants to create the illusion of involvement with the Issue Trusts sufficient to subject them to" jurisdiction by alleging that Ellis held positions with Savannah Bank, but Ellis was never employed by Savannah Bank.  *Id.* at 1745-46.  Ellis and EPRA also argue that even if they did have minimum contacts with Kentucky, there is no nexus between their conduct in Kentucky and the alleged wrongful acts or omission that produced Plaintiff's injury.  *Id.* at 1746.  Finally, Ellis and EPRA argue that Plaintiff may not rest solely on her pleadings to establish personal jurisdiction.  *Id.*

Plaintiff responds with a declaration and states that Ellis and EPRA fail to support their motion with an affidavit denying contacts with Kentucky.  [DE 116 at 1868].  Plaintiff also argues that even if Ellis and EPRA had put forth an affidavit, where personal jurisdiction is decided on the briefs, the Court should not weigh controverting assertions.  *Id.* at 1869.  Plaintiff argues in the alternative that if Ellis's and EPRA's "unsupported statements raise issues of fact," then she is entitled to discovery before the Court rules because the relevant information is in the possession of Ellis and EPRA.  *Id.*

i. "Transacting Business" within the meaning of section (2)(a)(1).

Plaintiff alleges that Ellis conducted business in Kentucky from 2003 forward by mailing statements to Plaintiff who lived in Kentucky, and that EPRA conducted business in Kentucky by performing work for the Issue Trusts.  [DE 104 at 1593, ¶ 14-15].  Ellis and EPRA dispute that they transacted business in Kentucky or supply services in Kentucky.  What the Court knows about Ellis and EPRA are from Plaintiff's allegations and unsworn declaration.  Ellis resides in Georgia

and EPRA's principal address is in Georgia and EPRA's members are citizens of Georgia and South Carolina. Plaintiff does not assert that EPRA's attorneys are licensed in Kentucky, that EPRA has paid taxes in Kentucky, or that EPRA has engaged in any services for clients residing in Kentucky pertaining to interests located in Kentucky. *See Auto Channel, Inc. v. Speedvision Network*, LLC, 995 F. Supp. 761, 765 (W.D. Ky. 1997) (finding there was "scant evidence" that defendants did business in Kentucky when neither defendant had "any business operations whatsoever within Kentucky"). Ellis is counsel to the trustee, Savannah Bank, N.A. Plaintiff also alleges that he is or was "a co-founder, chairman, director, and general counsel of Savannah Bancorp, Inc. and the Savannah Bank, N.A." [DE 116-1]. Ellis states, without affidavit, that "he was never employed by The Savannah Bank, N.A." [DE 110 at 1746]. Plaintiff alleges that Ellis researched Kentucky law on behalf of the Issue Trusts. [DE 116-2].

Numerous federal courts in Kentucky have construed Ky. Rev. Stat. § 454.210(2)(a)(1) and have taken "several different approaches." *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 505-06 (E.D. Ky. 2019) (discussing the various approaches). Some courts have looked to the plain meaning of "transacting business" as defined in Black's Law Dictionary. *Childress Cattle, LLC v. Cain*, No. 3:17-cv-388-JHM, 2017 WL 3446182, at *3 (W.D. Ky. Aug. 10, 2017) (quoting *Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank of W. Georgia*, No. CV 15-161-DLB-HAI, 2017 WL 3122661, at *14 (E.D. Ky. July 21, 2017) and stating, "Black's Law Dictionary defines 'transact' as '[t]o carry on or conduct (negotiations, business, etc.) to a conclusion'").

> Other courts have asked whether there has been "a course of direct, affirmative actions within a forum that result in or solicit a business transaction." *Gentry*, 2016 WL 6871252, at *3 (quoting *Modern Holdings, LLC v. Corning, Inc.*, No. 13-cv-405, 2015 WL 1481443, at *6 (E.D. Ky. Mar. 31, 2015) ). Under this approach, an "isolated contract[   ]" with a Kentucky resident does not alone constitute transacting business. *Id.* (quoting *Modern Holdings*, 2015 WL 1481443,

at *6). Thus, a non-resident defendant who enters into a one-time lending agreement with a Kentucky resident has not transacted business in Kentucky. *Id.* Similarly, the Kentucky long-arm statute does not extend to a Tennessee defendant that communicated several times with a Kentucky plaintiff by telephone and email but that provided services for the plaintiff exclusively in Tennessee. *See Envirometric Process Controls, Inc. v. Adman Elec., Inc.*, No. 3:12-cv-62-S, 2012 WL 4023789, at *2-3 (W.D. Ky. Sept. 12, 2012). In contrast, a non-resident defendant that establishes an office in Kentucky, has an employee who conducts business out of that office, and pays that employee for his work in Kentucky is subject to long-arm jurisdiction in Kentucky. *Gentry*, 2016 WL 6871252, at *3.

*Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d at 505–06.

Still other Kentucky district courts have looked to the Sixth Circuit's explanation of Michigan's long-arm statute, which contains the identical phrase "transacting any business." *See, e.g.*, *Eat More Wings, LLC v. Home Mkt. Foods, Inc.*, 282 F. Supp. 3d 965, 969 (E.D. Ky. 2017). The Sixth Circuit held that the "use of the word 'any' ... establishes that *even the slightest transaction is sufficient to bring a corporation within [the forum's] long-arm jurisdiction.*" *Id.* at 969 (alteration and emphasis in original) (quoting *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504-05 (6th Cir. 2014) ). The court in *Eat More Wings* found the defendant had transacted business in the Commonwealth by emailing a Kentucky resident, knowing he was in Kentucky, and asking him to "send samples and instructions for his products, which [plaintiff] fulfilled from Kentucky." *Id.* at 970.

Under any of the three approaches outlined above, viewing the allegations in the light most favorable to Plaintiff, there is no evidence that Ellis or EPRA was transacting business (1) by "carr[ying] on or conduct[ing] (negotiations, business, etc.) to a conclusion"; (2) through "a course of direct, affirmative actions within a forum that result in or solicit a business transaction" or (3) by reaching out to customers, deriving revenue or providing services in Kentucky. *Ford v. RDI/Caesars Riverboat Casino, LLC*, 503 F. Supp. 2d 839, 841-43 (W.D. Ky. 2007) (finding

defendant transacted business in Kentucky where roughly half of its customers were from Kentucky, it derived substantial revenue—in excess of $109 million—from Kentucky residents, it advertised extensively in Kentucky, and it actively sponsored events in Kentucky and made considerable contributions to Kentucky charities);  *Am. Trade Alliance, Inc. v. S. Cross Trading*, 2011 WL 112439, at *2 (Ky. Ct. App. Jan. 14, 2011) (finding that the defendant transacted business in Kentucky where it contracted to do business in Kentucky, accepted orders from and shipped goods to a Kentucky buyer, and actively promoted the sale of its products to Kentucky residents).

That leaves Plaintiffs allegation that Ellis and EPRA were "transacting business" in Kentucky because Ellis and EPRA, as agents of Savannah Bank and South State Bank, made telephone calls, sent mail and emails to her while she was living in Kentucky, did work for her as a beneficiary of the trust while she resided in Kentucky, and researched Kentucky law on behalf of the Issue Trusts.  This argument is addressed below as related to section 2(a)(4), but such contacts do not satisfy section 2(a)(1).  *Thompson v. Koko*, 2012 WL 374054, at *1-2 (W.D. Ky. Feb. 3, 2012)   (finding that out-of-state defendant's actions of sending emails and letters, confirming receipt of a wire transfer, and sending account statements to the plaintiff in Kentucky did not amount to transacting business in Kentucky).

Plaintiff cites the Kentucky Court of Appeals' statement in *H.E.B., LLC v. Jackson Walker, L.L.P* that "[m]aking telephone calls, texting, entering into contract negotiations, sending letters, and emailing are all recognized means of transacting business in the forum state."  587 S.W.3d 333, 341 (Ky. App. 2019)  (citing *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 509 (E.D. Ky. 2019).  *Hall v. Rag-O-Rama, LLC*, is again informative.  359 F. Supp. 3d 499, 508-09.  The Court in *Hall* noted that "two themes emerge from Sixth Circuit caselaw . . . [f]irst, a one-time transaction with a plaintiff in the forum state is unlikely to be sufficient . . . [but] a defendant who maintains

'a continuing business relationship' with a plaintiff in the forum state has purposefully availed itself of the forum's laws." *Id.* And then "[s]econd, the Sixth Circuit has put great emphasis on a defendant's affirmative act of reaching out to a plaintiff whom he knows to be in the forum state . . . [while] conversely, '[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State.'" *Id.* at 509 (citations omitted). The "transactions" described both in the Sixth Circuit case quoted in *Hall* and the accompanying district court cases all involve the defendant reaching out to the plaintiff in their forum state by travelling to that state or calling, texting, or emailing the plaintiff in that state. *See Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (finding the agent of the defendant travelling to the forum state to recruit the plaintiff satisfied the "slightest transaction" test); *Eat More Wings*, 282 F. Supp. 3d at 970 (finding defendant transacted business in Kentucky when he "sent emails to [plaintiff], knowing that he was in Kentucky, asking him to send samples and instructions for his products, which [plaintiff] fulfilled from Kentucky"). "[T]he key inquiry in personal jurisdiction cases concerns the activities of the defendant, not the plaintiff." *Churchill Downs, Inc.*, No. 3:14-CV-166-H, 2014 WL 2200674, at *6-7 (W.D. Ky. May 27, 2014) (quoting *Spectrum Scan, Inc. v. AGM CA*, 3:07 CV 72 H, 2007 WL 2258860, at *3 (W.D. Ky. Aug. 2, 2007)) (emphasis in original), adhered to on denial of reconsideration sub nom. *Spectrum Scan, LLC v. AGM California*, 519 F. Supp. 2d 655 (W.D. Ky. 2007). Thus, a plaintiff cannot "predicate personal jurisdiction on [plaintiff's] conduct instead of [Defendants'] contacts with Kentucky." *Id*. at *7 (quoting *Thompson*, 2012 WL 374054, at *2) (internal quotation marks omitted).

Here, Plaintiff's allegations do not assert Ellis and EPRA reached out to the Plaintiff while she was in the forum, but instead discuss Ellis and EPRA contacting her in relation to her requests

about the Kentucky trust. Plaintiff asserts that: "[f]rom 2003 through 2008 [Plaintiff] had repeated and substantial contact with J. Wiley Ellis regarding his legal representation pertaining to the above trusts, namely my personal requests to the Trustee of the aforementioned trusts seeking educational help for my son's high school and college education." [DE 116-2 at 1883]. This allegation specifies that defendants' communications with her were in response to her requests. The same analysis is true of allegation that Ellis and EPRA "required me to submit to him, and we exchanged numerous documents, including my tax returns as part of my seeking funds for my sons education from the Trustee of the trust funds held by Savannah Bank and later South State Bank." *Id.* And her allegation that Ellis and EPRA "also completed legal work for [Plaintiff's] brother, Paul T. Eitel, III, relating to his request for trust funds to pay for special high school education for his son . . . My brother has always lived in Kentucky." *Id.* at 1884. Ellis's and EPRA's communications were predicated on Plaintiff's conduct requesting monies and accountings from the trust and not on Defendants' contacts with Kentucky. *Churchill Downs,* 2014 WL 2200674, at *6-7.

Section 2(a)(1) also requires a defendant to transact business "in this Commonwealth." On the facts alleged, the telephone calls, sent mail, and emails to Plaintiff while she was living in Kentucky do not satisfy the requirements of transacting business in the Commonwealth. Both the communications as well as the research and other work done by Ellis and EPRA were not done by Ellis or EPRA in the Commonwealth. The mere fact that Ellis and EPRA were counsel to the out-of-state Trustee of a Kentucky trust does not alone satisfy the requirement that Ellis and EPRA were transacting business in the Commonwealth. Accordingly, the Court finds that Ellis's and

EPRA's conduct is not encompassed within provision one of § 454.210(2)(a) for "transacting any business in this Commonwealth."

> ii. "Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth" within the meaning of section 2(a)(4).

Ellis and EPRA claim that the Court does not have personal jurisdiction under § 454.210(2)(a)(4) because Defendants do not "1) regularly conduct[] or solicit[] business in the State of Kentucky; 2) [do] not engage in any persistent course of conduct in the State of Kentucky; and 3) [do] not derive substantial revenue from goods used or consumed or services rendered in the State of Kentucky." [DE 110].

Plaintiff's declaration states Ellis and EPRA did work for her related to the Issue Trusts while she lived in Kentucky and researched issues of Kentucky law related to the Issue Trusts. [DE 116-2]. Basically, Plaintiff communicated with Ellis and EPRA about her requests for financial support from the trusts, which involved sending documents, including Plaintiff's tax returns. *Id.* Plaintiff says the trusts were administered in Kentucky until 1994, but does not say that the trusts at issue were being administered in Kentucky at the time of her communications with Ellis and EPRA nor does that appear to be true from the record. *Id.* Plaintiff states that her father initiated a legal action in Kentucky in 2016 to modify the trusts and that a Kentucky court found it had jurisdiction over her father, a South Carolina resident, and the trust at issue, because it had been administered in Kentucky from creation until 1994. *Id.* But Plaintiff does not tie Ellis or EPRA to that legal action.

First, the Court finds that Defendants do not regularly conduct or solicit business in the state of Kentucky. Defendants have no offices, employees, or agents in Kentucky and are not registered to do business in Kentucky. [DE 110; *see Auto Channel, Inc.*, 995 F. Supp. at 765 (finding there was "scant evidence" that defendants did business in Kentucky when neither

defendant had "any business operations whatsoever within Kentucky"); *Spectrum Scan*, 519 F. at 658]. Neither party has presented any facts to suggest that Ellis and EPRA solicit business in Kentucky. As a result, the Court may not exercise personal jurisdiction over Ellis and EPRA on the basis that they regularly conduct or solicit business in Kentucky.

Second, Plaintiff has failed to plead or demonstrate that Ellis or EPRA "derive substantial revenue from goods used or consumed or services rendered" in Kentucky. Thus, the Court may not exercise personal jurisdiction over Ellis or EPRA under § 454.210(2)(a)(4)'s "substantial revenue" prong.

The issue remains whether Defendants engaged in a persistent course of conduct in Kentucky such that personal jurisdiction is proper under § 454.210(2)(a)(4). Generally, courts applying Kentucky's long-arm statute have been "unpersuaded by the fact that Defendant may have communicated with the Plaintiff through letters, telephone calls, e-mails or facsimiles directed to Kentucky." *Spectrum Scan, LLC*, 519 F. Supp. 2d at 658; *see also Churchill Downs*, 2014 WL 2200674 at *8 ("[P]eriodic communications via email and telephone about a single contract, do not constitute persistent conduct, nor does the entry into a single, potentially long-term contract.").

In *Spectrum Scan*, the court noted that "the only reason" such communications "were directed to Kentucky is because Plaintiff found it convenient to be located there. Presumably, it was immaterial to Defendant whether Plaintiff [conducted business] in Kentucky, California, or elsewhere and Defendant would have been willing to communicate with Plaintiff without regard to Plaintiff's location." *Spectrum Scan*, 519 F. Supp. 2d at 658. This principle has been echoed by other courts, although in the context of the due process purposeful availment test. *See Papa John's Int'l, Inc. v. Entm't Mktg. & Commc'ns Int'l, Ltd.*, 381 F. Supp. 2d 638, 642–43 (W.D. Ky.

16

2005) ("[T]he most of the significant contacts with Kentucky arise simply from Papa John's having its headquarters here and performing its own work here, rather than from Defendants either performing or deliberately aiming their conduct here"); *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 395 (6th Cir. 1997) ("Nor is our conclusion altered by the fact that the defendants communicated with International Technologies in Michigan by letter, telephone, and facsimile. Such communications have no talismanic qualities, and the only reason the communications in question here were directed to Michigan was that International Technologies found it convenient to be present there." (internal citations omitted)).

Plaintiff argues that Ellis and EPRA conducted business in Kentucky because Ellis and EPRA, as agents of Savannah Bank and South State Bank, made telephone calls, sent mail, and emails to her while she was living in Kentucky and did work for her as a beneficiary of the trust while she resided in Kentucky. These contacts are based entirely on the beneficiary's choice of residence and not on Ellis's or EPRA's actions.  Presumably, Ellis or EPRA would have responded to Plaintiff's requests for financial support from the trusts no matter where Plaintiff resided.  Thus, Ellis's and EPRA's communications to Kentucky were based on the Plaintiff's choice of residence and not on their relationship with the forum.

The allegations here that Ellis and ERPA made phone calls and communicated with Plaintiff while in Kentucky were mostly initiated by Plaintiff's unilateral contact requesting funds under the trusts.  But the alleged conduct of Ellis and EPRA is more than a one-time transaction, as Plaintiff alleges that they sent her information pertaining to the Issue Trusts which were registered in Kentucky.

In *Clark v. Kolbell,* No. 2014-CA-000747-MR, 2016 WL 304625, at *4 (Ky. Ct. App. Jan. 22, 2016), the Kentucky Court of Appeals held that an out-of-state physician, who reviewed a

workers' compensation claimant's medical records for an out-of-state company that had contracted with the insurance carrier, did not transact business in state or cause tortious injury by act or omission in state under Kentucky's long-arm statute. The Kentucky court thus did not have personal jurisdiction over the physician for the claimant's negligence and defamation claim. This was even though the carrier contracted to supply services in Kentucky, the physician was two steps removed from the insurance carrier because the physician transacted all his business outside of the state, and the alleged tort was committed either in the physician's state or the company's state.

Ellis's and EPRA's relationship to Plaintiff is much like that of the out-of-state physician in *Clark* that performed work on behalf of another out-of-state company relating to a worker's compensation claim that was made in Kentucky. The work they performed was outside Kentucky, for an out-of-state entity, Savanah Bank, and the alleged misconduct that Ellis and EPRA committed was out-of-state. The Trusts that Ellis and EPRA and their client were doing work for was a trust created in Kentucky, administered in Kentucky until 1994, and about which recent matters have been initiated in the Kentucky district and probate courts. But neither Plaintiff's allegations nor declaration reflect that Ellis and EPRA were regularly doing business in the Commonwealth. "Kentucky has elected to assume personal jurisdiction over a nonresident tort-feasor whose activities outside the state result in injury in this state only if that tort-feasor regularly does or solicits business within the state or has other substantial connection to the Commonwealth." *Pierce v. Serafin*, 787 S.W.2d 705, 707 (Ky. Ct. App. 1990). Thus, the Court finds that Ellis' and EPRA's conduct is not encompassed within provision one of § 454.210(2)(a)(4) for "causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth."

iii.  Nexus under Section 2(b).

Even if Ellis's and EPRA's conduct had fallen into one of the nine enumerated categories, a nexus would not exist that Plaintiff's claims "originated from, or came into being, as a result of" Ellis's and EPRA's persistent course of conduct in Kentucky. *Caesars,* 336 S.W.3d at 58.  The conduct Plaintiff alleges connects Ellis and EPRA to Kentucky (phone calls, emails, etc.) is ancillary to the alleged wrongful acts of unnecessarily billing the trusts, obfuscating the purposes of the trusts, and allowing Plaintiff's father to encroach on the trusts' principal, all of which happened outside Kentucky.  Thus, Plaintiff fails to demonstrate a nexus sufficient to satisfy Kentucky's long-arm statute.  Because Ellis's and EPRA's activities do not fit into one of the statute's enumerated categories and Plaintiff fails to demonstrate a nexus that her claims originate from Ellis's and EPRA's conduct in Kentucky, "*in personam* jurisdiction may not be exercised," and the inquiry ends. *Id.* at 57.

iv.  Waiver

Finally, although moot at this stage of the proceeding, Ellis and EPRA have not waived their ability to challenge personal jurisdiction as a result of Plaintiff's RICO claim.  The "Sixth Circuit has not yet spoken concerning the breadth of the RICO nationwide service provision," and has, in the past, chosen instead to "rely upon a traditional minimum contacts analysis, consistent with the allegations of the complaint and established law to find personal jurisdiction over" the defendant. *High Adventure Ministries, Inc. v. Tayloe,* 309 F. Supp. 3d 461, 471 (W.D. Ky. 2018).

For all the foregoing reasons, Ellis' and EPRA's motion to dismiss for lack of personal jurisdiction is **GRANTED**.

**B. South State Advisory's Motion to Dismiss for Lack of Personal Jurisdiction [DE 126].**

1. Background

Plaintiff alleges that South State Advisory is a citizen of South Carolina.  [DE 104]. There is no dispute that South State Advisory is not a citizen of the forum state.  As to South State Advisory, Plaintiff alleges claims for an Accounting and Negligence.  *Id.*  at 1650-51. Plaintiff alleges that South State Advisory managed the assets of the Issue Trusts, and that the beneficiaries of the Issue Trusts lived and live in Kentucky:

> Defendant South State Advisory, Inc. ("Advisory") is a South Carolina corporation with its principal place of business in South Carolina.  It is a citizen of South Carolina.  Advisory managed the assets as agent for South State from 2013 to the present for the beneficiaries of the Issue Trusts who lived and live in Kentucky.

*Id.* at 1594.

South State Advisory submitted the affidavit of David Kirkpatrick [DE 126-2] in support of its motion to dismiss for lack of personal jurisdiction.  Mr. Kirpatrick's affidavit states that:

- South State Advisory is a wholly owned subsidiary of Defendant South State Bank and is itself headquartered in South Carolina.

- South State Advisory provides investment advisory, financial planning, and retirement plan administration and consulting services to individuals and clients of South State Bank.

- Relevant to this dispute, starting in 2019, South State Advisory provided investment advisory services to South State Bank in connection with South State Bank's management of assets held by the trusts at issue.

- South State Advisory, however, has never had any direct client relationship with those trusts or their beneficiaries and never provided those beneficiaries, including the Plaintiff, any services whatsoever.

- Nor did South State Advisory have any say in whether distributions of the trusts' assets were ever made to any trust beneficiary.

20

- South State Advisory has no connections to Kentucky in its business activities, whether as they pertain to this case or not.

- South State Advisory's "geographic footprint" includes only South Carolina, North Carolina, Georgia, Florida, Virginia, and Alabama.

- South State Advisory has no Kentucky clients and does not market its services to Kentucky residents.

- South State Advisory has no employees or offices located in Kentucky.

- South State Advisory derives no revenue from clients or activities in Kentucky.

[DE 126-2].  In response to South State Advisory's affidavit, Plaintiff argues that these facts from her Second Amended Complaint satisfy personal jurisdiction over South State Advisory:

- Her grandparents were residents of Kentucky and established the trusts in Kentucky.

- Plaintiff grew up in Kentucky and lived in Kentucky at various times as an adult, including 1980-1984, 1992-2003, and 2007-2015.

- South State Advisory managed trust assets for beneficiaries that lived and continue to live in Kentucky.

- From 2013 to the present, SSA failed to provide critical information in the monthly statements relating to the trusts.

[DE 104].  Plaintiff also submitted an unsworn declaration on South State Advisory's contacts with Kentucky. [DE 135-1].  Plaintiff argues that "[i]n 2014, Amy Piersol, as representative of South State Wealth, organized a call with South State Advisory and listed adviser Brian Barker to discuss the management of the trust assets in which Mary was a principal beneficiary."  [DE 135 at 2012].  She also states that "South State Advisory, via Amy Piersol, Amy Henderson, Brian Barker, David Kirkpatrick, and other individuals continued to use the mails and the phone lines to mislead Mary in Kentucky on the law, the trusts, and their management of the trusts' assets." *Id.* Plaintiff argues that her declaration contradicts South State Advisory's statement that "beginning

in 2019, SSA began providing investment advisory services to the trusts despite [Mr. Kirkpatrick's] name being on statements provided to Mary as far back as 2016." *Id.* Plaintiff argues that Mr. Kirkpatrick's affidavit fails to address the fact that statements, investments, and other services were provided under the "South State Wealth" name. *Id.* She further states that SSA provided advisory services from November 2018 to May 2020 after the trusts terminated, leading to full remittal of trust asset ownership to the principal beneficiaries, namely Mary and Paul T. Eitel, III (a resident of Kentucky). *Id.* at 2013. Plaintiff also states that South State Advisory derived fees for its services directly from principal assets owned by Mary and Paul T. Eitel, III from November 2018 to May 2020 and before that from principal assets held in trust and willed to Mary and Paul T. Eitel, III for their benefit. *Id.* Plaintiff argues that South State Bank delegated investment management services for the trusts to South State Advisory and that when "a party accepts a delegation from the trustee of a trust that is subject to the law of Kentucky, such party accepts jurisdiction of the courts of Kentucky," under KRS 386B.8-070(4).

2.  Standard

Neither party requested a hearing on South State Advisory's motion to dismiss, thus the Court decides the motion on the filings and under the standard set forth above, viewing the pleadings and affidavits in a light most favorable to the plaintiff and not "weigh[ing] the controverting assertions of the party seeking dismissal." *Air Prod.*, 503 F.3d at 549 (citing *Theunissen*, 935 F.2d at 1459) (internal quotation omitted).

3.  Analysis

There is no argument that this Court has general jurisdiction over South State Advisory. Thus the Court's analysis is limited to whether it has specific personal jurisdiction over South State Advisory.  South State Advisory makes a compelling and well-supported motion to dismiss for

lack of personal jurisdiction.  As stated above with regard to Ellis's and EPRA's motion to dismiss, the mere fact that a beneficiary may have resided in the forum state is not enough alone to satisfy Kentucky's long-arm statute (or federal due process).  And that the trusts were neither being administered in Kentucky during the time of South State Advisory's involvement, nor had assets in Kentucky during that time, is important.[2]  But Plaintiff has raised an issue of fact surrounding South State Advisory's relationship with South State Bank on South State Advisory's providing of investment services to the Issue Trusts and whether that may or may not have resulted in a delegation of duties subjecting South State Advisory to the forum jurisdiction under KRS 386.8-070.  South State Advisory submits to the Court its investment advisory and services agreement between it and South State Bank.  [DE 137-1].  The Court will not weigh the controverting assertions of South State Advisory and declines to address this motion as one for summary judgment.  Thus, viewing the pleadings and affidavits in a light most favorable to the Plaintiff, she had made a *prima facie* showing sufficient to satisfy personal jurisdiction under Kentucky's long-arm statute and federal due process at this stage of the proceedings.  Thus, South State Advisory's motion to dismiss for lack of personal jurisdiction is **DENIED**.

## C.  South State Advisory's Motion to Dismiss for Insufficient Service of Process [DE 126].

### 1.  Background

South State Advisory moves to dismiss Plaintiff's Second Amended Complaint for failure to effectuate service of process.  South State Advisory has not waived service.  Plaintiff personally served Nicole Comer, South State Advisory's registered agent for service of process, on the evening of March 10, 2021 by a process server.  [DE 135 at 2018].  Plaintiff submitted her process

---

[2] As noted above, despite the trusts being administered outside Kentucky and the assets of the trusts being held outside Kentucky, recent litigation has been initiated and taken place in Kentucky's state courts surrounding these trusts. Neither Plaintiff nor South State Advisory cited cases analyzing personal jurisdiction in the context of a trust litigation.

server's affidavit [DE 135-1 at 2096-97] in support of same and filed proof of service in the record on March 12, 2021. [DE 133].

Plaintiff argues that this constitutes proper service under Fed. R. Civ. P. 4(h)(1)(B), Fed. R. Civ. P. 4(h)(1)(A), Ky. R. Civ. P. 4.04(5), and Kentucky's long-arm statute, KRS 254.210(3)(a)(3). South State Advisory argues that this does not constitute proper service and that South State Advisory was required by Kentucky's long-arm statute to be served via the Kentucky Secretary of State. [DE 137 at 2098-99].

2. Standard

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Intern, Ltd. V. Rudolf Wolf & Co., Ltd.*, 484 U.S. 97, 104 (1987). Pursuant to Fed. R. Civ. P. 12(b)(5), a party may file a motion asserting insufficient service of process as a defense. When service of process is challenged, the plaintiff bears the burden of perfecting service of process and showing that proper service was made. Fed. R. Civ. P. 4(c)(1); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). "[A]ctual knowledge and lack of prejudice cannot take the place of legally sufficient service." *LSJ Inv. Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 324 (6th Cir. 1999); *see also Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004).

Fed. R. Civ. P. 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." "[T]he court has discretion to permit late service even absent

a showing of good cause." *John W. Stone Oil Distrib., LLC v. PBI Bank, Inc.*, No. 3:09-CV-862-H, 2010 WL 3221800, at *1–2 (W.D. Ky. Aug. 12, 2010).

    3.  <u>Analysis</u>

Service of corporations and other business entities is governed by Rule 4(h) of the Federal Rules of Civil Procedure. Where service is accomplished in a judicial district of the United States, these methods of service are available:

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual [i.e., following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made]; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant . . .

Fed. R. Civ. P. 4(h)(1). Thus, service may be made in accordance with applicable state law, or process may be "delivered" to an officer, managing or general agent, or other authorized agent.

Plaintiff served South State Advisory under Fed. R. Civ. P. 4(h)(1)(B) by delivering a copy of her complaint and summons to South State Advisory's agent for service of process. Fed. R. Civ. P. 4(h)(1)(B) (a plaintiff may serve a corporation by "delivering a copy of the summons and of the complaint to an officer. . . or any other agent authorized by appointment . . . to receive service of process"). But South State Advisory argues that this is not enough where the Court is exercising personal jurisdiction over it under Kentucky's long-arm statute and that Plaintiff had to serve South State Advisory by effectuating service of process on the Kentucky Secretary of State. Plaintiff

does not dispute that she had to effectuate service on South State Advisory under Kentucky's long-arm statute, but argues that she has complied with its requirements.  [DE 135 at 2019].

Under Kentucky's long-arm statute, "[w]hen personal jurisdiction is authorized by this section, service of process *may* be made":

> 1. In any manner authorized by the Kentucky Rules of Civil Procedure;
>
> 2. On such person, or any agent of such person, in any county in this Commonwealth, where he may be found; or
>
> 3. On the Secretary of State who, for this purpose, shall be deemed to be the statutory agent of such person.

KRS § 454.210 (3)(a).  Plaintiff argues that by personally serving South State Advisory's registered agent she has complied with the first subsection of KRS 454.210 (1), making service of process "[i]n any manner authorized by the Kentucky Rules of Civil Procedure," because under Kentucky Rules of Civil Procedure 4.01(b)(1) the plaintiff may serve a defendant by "any person authorized" to deliver the complaint and summons, and under 4.04(5), service may be made on a corporation as follows:

> (5) Service shall be made upon a corporation by serving an officer or managing agent thereof, or the chief agent in the county wherein the action is brought, **or any other agent authorized by appointment or by law to receive service on its behalf.**

Ky. R. Civ. P. 4.04(5) (emphasis added).  South State Advisory argues that this is incorrect because subsection (1) of KRS 454.210(3)(a) only clarifies subsections (2) and (3) as to the way a plaintiff can serve either a person in the Commonwealth of Kentucky or the Kentucky Secretary of State. [DE 137 at 2101].  The Court disagrees.  The plain language of KRS 454.210 provides that subsections (1), (2), and (3) are separated by the disjunctive "or" and semicolons; thus, the words of each subsection have a separate meaning.  The Court thus cannot construe KRS 454.210 as

making subsections (2) and (3) a mere subset of subsection (1). As a result, South State Advisory's motion to dismiss for insufficient service of process is denied.

## II.    **CONCLUSION**

For the reasons above, the Court **ORDERS** as follows:

1. Defendants Ellis's and Ellis, Painter, Ratteree and Adams, LLP's Motion to Dismiss for Lack of Personal Jurisdiction [DE 110] is **GRANTED**;

2. Defendants Ellis's and Ellis, Painter, Ratteree and Adams, LLP's Motion for Summary Judgment [DE 195] is **DENIED AS MOOT**;

3. Eitel's Motion to Deny and Alternatively Defer Consideration of Defendants Wiley Ellis and Ellis, Painter, Ratterree and Adams LLP's Motion for Summary Judgment [DE 206] is **DENIED AS MOOT**.

4. Defendant South State Advisory, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint [DE 126] is **DENIED**.

Rebecca Grady Jennings, District Judge

United States District Court

September 30, 2021