UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00012-RGJ

MARY EITEL                                                              PLAINTIFF

VS.

PNC BANK, N.A. et al.                                                   DEFENDANTS

<u>**MEMORANDUM OPINION
AND ORDER**</u>

Before the Court are two motions from Plaintiff Mary Eitel ("Plaintiff"). First, Plaintiff filed a Motion to Amend Scheduling Order. (DN 285). Defendants Marilyn Eitel ("Defendant Eitel"), SouthState Bank, N.A. and SouthState Advisory, Inc. (collectively, "SouthState"), and Wells Fargo Bank, N.A. ("Wells Fargo") have each responded in opposition. (DN 289; DN 290; DN 291). Plaintiff has filed a reply. (DN 292). Defendant PNC Bank, N.A. ("PNC") did not respond, and the time to do so has passed. Second, Plaintiff submitted a Motion to Compel Discovery from PNC. (DN 316). PNC has responded (DN 331), and Plaintiff has replied (DN 340). As both matters are now ripe, the Court will rule on each in turn. The District Judge has referred all litigation planning issues to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(A) for resolution. (DN 102).

I. Background

This case involves the administration of three trusts created by Plaintiff's grandparents and for which Plaintiff was a remainder beneficiary.  (DN 104, at PageID # 1589). Plaintiff claims that SouthState, Wells Fargo, and PNC mismanaged the trusts and breached their fiduciary duties owed

to Plaintiff because they depleted the trust's assets in favor of Plaintiff's late father and his wife, Defendant Eitel. (*Id.*)

Discovery has been a prolonged, contentious process. The Court has had to intervene to settle numerous disputes. (DN 250; DN 251; DN 252; DN 253; DN 254; DN 255). Twice Plaintiff has requested the Court to amend the scheduling order to extend discovery (DN 154; DN 233), which the Court granted (DN 175; DN 267). Importantly, this Court emphasized in its last scheduling extension order that "it is not inclined to continue extending the deadlines in this case," and that it was "inclined to extend the discovery deadlines only long enough to accommodate the [discovery rulings] in [that] Order." (DN 267, at PageID # 5581–82).

## II. Motion to Amend Discovery Order

Plaintiff now moves to extend discovery a third time. (DN 285). To justify the extension, Plaintiff argues that "given the scope of time and significant volume of documents at issue in this case, justice and equity require an expansion of the fact and expert discovery deadlines" so that she may pursue four avenues of discovery: (1) take SouthState entity depositions; (2) address issues with the PNC deposition; (3) complete production and transmittal of party expert documents; and (4) address "deficiencies in final discovery." (*Id.*, at PageID # 5933).

### a.   Legal Standard

Federal Rule of Civil Procedure 16(b)(4) states that a scheduling order may only be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Rule 16(b) leaves the decision to grant a motion to modify a scheduling order to the Court's discretion. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). In evaluating whether good cause exists, "[t]he primary measure is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting

*Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)) (add'l citations omitted); *see also Leary*, 349 F.3d at 906 (a court may modify a scheduling order for good cause only if a deadline "cannot reasonably be met despite the diligence of the party seeking the extension."). Another relevant consideration is possible prejudice to the party opposing the modification. *Inge*, 281 F.3d at 625.

      b.  Analysis

Applying these principles to the facts presented, the Court finds that Plaintiff fails to demonstrate good cause for granting her Motion to Amend the Scheduling Order. (DN 285). The Court determines Plaintiff has not met the diligence standard needed to merit continued discovery.

The latest deadline for discovery was May 10, 2022. (DN 267). This deadline came after the Court granted two previous extensions at Plaintiff's request. (DN 204; DN 267). Plaintiff's counsel argues that personal emergencies and pre-planned conflicts prevented him from utilizing the initial part of the last extension period, and when coupled with the Defendant's alleged unreasonable scheduling demands, these conflicts prevented him from taking Rule 30(b)(6) depositions of the SouthState entities. (DN 285, at PageID # 5933-34). Plaintiff also asks for more time to review documents SouthState and PNC allegedly produced late on April 19, 2022, and May 3, 2022. (*Id.*, at PageID # 5934).

The Court sympathizes with personal difficulties that Plaintiff's counsel has experienced; however, those difficulties do not fully excuse the timing of events since the last extension. In its March 24, 2022 Order, the Court granted Plaintiff's Motion for a six-week extension but made clear its reservations in doing so. (DN 267). The Court said that it was "not inclined to continue extending the deadlines." (DN 267, at PageID # 5581). Further, the Court stated it would "extend the discovery deadlines only long enough to accommodate the directives" in the order—including

taking the 30(b)(6) deposition of SouthState. (*Id.*, at PageID # 5582). Plaintiff did not diligently abide by the Court's directives.

Twelve days after the order was entered, SouthState, not Plaintiff, attempted to schedule Rule 30(b)(6) depositions for Plaintiff. (DN 290-5, at PageID # 6008). SouthState emailed Plaintiff and offered two available dates; Plaintiff responded eight days later. (*Id.*; DN 290-6, at PageID # 6010). Put plainly, Plaintiff's first communication regarding the 30(b)(6) depositions came twenty days after the Court granted an extension directing Plaintiff to schedule them. (*Id.*)

Plaintiff's counsel rejected the dates SouthState initially offered for the depositions due to a previously undisclosed four-day commitment. (*Id.*). SouthState then offered additional dates, which Plaintiff also vetoed. (DN 290-8, at PageID # 6017–19). Rather than immediately raising the scheduling issue with the Court when it became apparent that the Rule 30(b)(6) depositions could not be timely completed, Plaintiff waited until the day discovery closed to ask the Court to intervene through this instant motion. (DN 285).

As to the late-produced documents, there are similar issues. Plaintiff and Defendants agreed to follow a protective agreement, and Defendants made clear that they would not begin production until all parties executed the agreement. (DN 290-2, at PageID # 6001). Defendants sent a finalized copy of the agreement to Plaintiff on June 2, 2021, but Plaintiff did not execute the agreement until January 24, 2022. (*Id.*, at PageID # 6000; 290-1, at PageID # 5990–91). The final party, PNC, signed the agreement on April 5, 2022, and Defendants began producing documents immediately. (DN 290-2, at PageID # 5997). While Plaintiff had to wait over two months after execution to begin receiving documents, the Defendants began production on April 5, 2022—over a month before the discovery deadline. (*Id.*). Further, when there was an apparent issue with the

link to produced documents, Plaintiff's counsel waited over a week to try to correct it. (DN 290-8, at PageID # 6017).

Plaintiff argues she was diligent because she took depositions of PNC and Wells Fargo as well as served several discovery requests during the extended period. However, these depositions occurred in the final week of the sixty-day discovery window, and portions of these new discovery requests exceed the scope of the grounds for Plaintiff's last request for an extension. Plaintiff correctly points out that she was not totally idle in pursuing discovery during this time. (DN 292, at PageID # 6037). However, even considering the personal circumstances of Plaintiff's counsel, Plaintiff did not diligently utilize the latest extension as the Court directed.

In addition to assessing whether good cause exists under Rule 16, courts may also consider whether the motion would prejudice the non-moving party. *Smith v. Holston Med. Group, P.C.*, 595 F. App'x 474, 478 (6th Cir. 2014) (citing *Inge*, 281 F.3d at 625); *see also Leary*, 349 F.3d at 909 ("[A] determination of the potential prejudice to the nonmovant also is required when a district court decides whether or not to amend a scheduling order.").

Defendants SouthState and Wells Fargo argue granting the motion would prejudice them because it would unnecessarily lengthen the suit's timeline and allow Plaintiff to continue to amend her complaint. (DN 290, at PageID # 5988–89; DN 291, at PageID # 6026). Indeed, Plaintiff's motion states that the scheduling order should be amended to, among other things, allow Plaintiff to "likely supplement pleadings as necessitated by discovery." (DN 285, at PageID # 5930).

The federal rules committee designed Rule 16 to ensure "at some point both the parties and the pleadings will be fixed." *Zwick Partners, LP v. Quorum Health Corp.*, 394 F. Supp 3d 804, 812–13 (M.D. Tenn. Aug. 2, 2019) (citing Fed. R. Civ. P. 16 advisory committee's note to 1983

amendment). As SouthState points out, portions of Plaintiff's recent discovery requests indicate Plaintiff may be pursuing information on claims beyond the ones in the current complaint—and claims that are not her own to make.[1] Allowing discovery to continue and potentially expand the scope of this suit, or lay groundwork for a separate suit, would go against the intent of the advisory committee. Should the Court allow for this expanded discovery, the Defendants could be prejudiced by new claims, necessitating additional discovery of their own.[2]

Plaintiff did not diligently use the latest discovery extension. While the Court sympathizes with the personal circumstances regarding Plaintiff's counsel's family health issues, this does not excuse Plaintiff's prolonged inaction in completing discovery. Further, Plaintiff has inappropriately used this last discovery extension to probe into potential claims outside of the current suit. As such, the Court finds good cause does not exist to grant an extension.

### III. Motion to Compel

The Court now turns to Plaintiff's Motion to Compel. (DN 316). Plaintiff's motion takes issue with PNC's discovery responses. (*Id.*, at PageID # 6464–74). Plaintiff argues PNC treated the requests too narrowly and ignored their actual scope. (*Id.*). Specifically, Plaintiff contests PNC's responses to (1) interrogatory request numbers ("Int. Nos.") 1 and 2; (2) Requests for Production numbers ("RFP Nos.") 1 through 4; and (3) Requests for Admission numbers ("RFA Nos.") 1 and 2. (*Id.*).

---

[1] Request for Admission Nos. 7 and 8 of the most recent discovery from Plaintiff asks SouthState to admit Leon Horne, III, Plaintiff's counsel in this case, was a qualified beneficiary of the trust and was not sent trust statements, as required by the instrument. (DN 290-11, at PageID # 290–11.)

[2] Defendant Eitel also claims allowing the amendment would prejudice her due to the costs of prolonged litigation. (DN 289, at PageID # 5963–64). Increased costs do not amount to prejudice. *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 325 (6th Cir. 2010) ("[I]t does not make intuitive sense that simply claiming an increase in litigation costs should be sufficient to establish prejudice."). However, due to Plaintiff's lack of diligence during the last discovery period, there still is not good cause for an extension.

In its response, PNC focuses on procedural issues with Plaintiff's motion. (DN 331). First, PNC argues Plaintiff's motion is untimely because it comes two months after the close of fact discovery. (*Id.,* at PageID # 9516). Second, PNC argues the motion violates the Court's scheduling order (DN 131) and Local Rule 37.1, which requires parties to first raise discovery issues with the Court via a joint telephonic conference before filing a motion. (*Id.*, at PageID # 9517–18). Lastly, PNC addresses the merits of Plaintiff's motion and states it has produced all information within the scope of discovery in this case. (*Id.,* at PageID # 9518–19).

Though not explicitly stated, PNC believes it has produced all relevant discovery by providing only information directly pertaining to the Eitel Family Trust; whereas, Plaintiff believes the rules of discovery entitle her to more. While procedural issues with Plaintiff's motion exist, the Court will focus on the merits of Plaintiff's arguments.

    a.   Legal Standard

Federal Rule of Civil Procedure 26(b) governs the scope of discovery. Fed. R. Civ. P. 26(b). In relevant part, Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the parties' relative access to relevant information . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* at (b)(1). However, all discovery permitted under the Rule is subject to the limitation imposed by Rule 26(b)(2)(C). Fed. R. Civ. P. 26(b)(2)(C).  This section of the Rule allows the Court to limit the "frequency or extent of discovery" if: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in

the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Id.* at (b)(2)(C)(i), (ii), & (iii).

Trial courts have wide discretion in dealing with discovery matters. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). If the discovery sought appears to be relevant, "the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). Yet if "the relevancy of a particular discovery request in dispute is not apparent on the face of the request, then the burden to establish the relevancy of that request falls upon the party seeking the discovery." *Lillard v. Univ. of Louisville*, No. 3:11-CV-554-JGH, 2014 WL 12725816, at *6 (W.D. Ky. Apr. 7, 2014). Thereafter, "courts generally employ a balancing test and will weigh the burdensomeness to the responding party against the requesting party's need for and relevance of the information sought to be obtained." *Id.*

b.   Analysis

i.   Interrogatory Responses

Plaintiff takes issue with PNC's responses to Int. Nos. 1 and 2. (DN 316, at PageID # 6468). These interrogatories asked PNC to identify: (1) all PNC trust accounts holding Porter Paint Company ("PPC") Stock; and (2) all PNC personnel on the board of directors of PPC from 1981 to 1988. (DN 331-4, at PageID # 9586–88). Plaintiff argues PNC's responses amount to inappropriate boilerplate objections, and because PNC falsely claims there was no relationship between PNC and PPC, it shows that PNC failed to adequately review the microfiche files. (DN

316, at PageID # 6468). PNC maintains that it has produced all "file materials . . . *associated with the Trusts involved in this litigation*." (DN 331, at PageID # 9518) (emphasis added).

The relevancy of Int. No. 1, which sought to identify other trust accounts holding PPC stock, is not immediately apparent. Plaintiff fails to carry her burden of establishing relevancy. (*See* DN 316, at PageID # 6464–66). Plaintiff's motion discusses the "close relationship between PNC, the Eitel Family Trusts' settlors, and PPC," but it does not offer facts to show how information of other PNC accounts would support her claim. The Court will not order PNC to act further on this interrogatory.

Conversely, the relevancy of Int. No. 2, which sought to identify all PNC personnel on the PPC board of directors from 1981–1988, is apparent. If PNC had employees on the PPC board, PNC would have had key, nonpublic insight into the company. Thus, PNC bore the burden of proving the request was not relevant. Although PNC objected to the interrogatory based on vagueness, its response to Plaintiff's motion failed to add sufficient context to refute the relevance. (DN 331-4, at PageID # 9588; DN 331, at PageID # 9518–19). Still, PNC insists that it has conducted a diligent search and determined that it has no knowledge about the PPC board of directors during the relevant time frame. (DN 331–4, at PageID # 9588). PNC cannot produce information that it does not have. To allay Plaintiffs' concerns, however, the Court will require PNC to provide a sworn declaration stating it could not find any information relating to the PPC board of directors from 1981 to 1988 after a full search of all available documents in its possession.

ii.      Requests for Production

Plaintiff also takes issue with PNC's responses to RFP Nos. 1 through 4 from her second requests for discovery. (*Id.,* at PageID # 6468–71). RFP No. 1 seeks "[a]ll internal PNC communications or memorandums regarding [PPC] from 1981 to 1988." (DN 316-1, at PageID #

6479). PNC responded that "any documents PNC can provide in response to this request . . . have already been provided." (DN 331-4, at PageID # 9584). RFP Nos. 2 and 3 request "[a]ll communication authored or received by William Chandler, an employee of PNC, relating to Porter Paint Company stock from 1981 to 1988."[3] (DN 316-1, at PageID # 6479–80). PNC responded by again stating that it has provided the requested documentation. (DN 331-4, at PageID # 9585–86). RFP No. 4 asks PNC for "[a]ll documents reflecting material utilized by PNC to evaluate trust accounts holding Porter Paint Stock from 1981 to 1988." (DN 316-1, at PageID # 6481). Once more, PNC responded to the request by stating that it has provided all available requested information. (DN 331-4, at PageID # 9586).

These requests seek relevant documents PNC claims to not have. The Court will require PNC to provide another sworn declaration stating that it has searched for and fully produced all available, responsive documentation relating to RFP Nos. 1, 2, 3, and 4.

iii.    Requests for Admission

Lastly, Plaintiff addresses two of PNC's responses to RFAs. (DN 316, at PageID # 6472). First, RFA No. 1 asked PNC to admit that the Eitel Family Trust instrument "permitted PNC to retain Porter Paint stock," and PNC responded with boilerplate objections and stated "the subject Trust Agreements speak for themselves." (DN 331-4, at PageID # 9588). Plaintiff's motion included an excerpt from the Eitel Family Trust instrument, which plainly states that the trustee would have the power "to retain, so long as the Trustee in the Trustee's entire discretion considers advisable, any stock of Porter Paint Co." (DN 316, at PageID # 6472).

---

[3] The quoted material comes from RFP No. 2. This request wholly eclipses the material covered by RFP No. 3, which asks for only communications "received by" William Chandler; while RFP No. 2 also asks for communications "authored by him," RFP No. 3 does not. (DN 316-1, at PageID # 6479–80).

Courts within the Sixth Circuit have recognized that "[s]tating a document speaks for itself avoids the purpose of requests for admission, i.e., narrowing the issues for trial." *Aprile Horse Transp., Inc. v. Prestige Delivery Sys., Inc.*, No. 5:13-CV-15-GNS-LLK, 2015 WL 4068457, at *5 (W.D. Ky. July 2, 2015) (citing *Miller v. Holzmann*, 240 F.R.D. 1, 4 (D.D.C. 2006)). A party's objection that a document "speaks for itself," therefore, does not sufficiently meet the requirements of Rule 36. *See Jones v. Univ. of Memphis*, No. 2:15-cv-02148-JPM-cgc, 2016 WL 6123510, at *2 (W.D. Tenn. Sept. 23, 2016) (citing *Aprile Horse*, 2015 WL 4068457, at *5). Because PNC neither admitted nor denied the request and instead relied on the unacceptable "speaks for itself" objection, the Court finds the appropriate remedy is to have PNC amend its answer to RFA No. 1. *See Jones*, 2016 WL 6123510, at *2.

Second, RFA No. 2 asked PNC to admit that it was "a registered securities dealer with the OCC from 1977 to 1994." (DN 331-4, at PageID # 9588). PNC again evaded directly answering with boilerplate objections and challenged the request for being vague due to Plaintiff not defining "OCC" and "registered securities dealer." (*Id.*, at PageID # 9588-89). To the extent that Plaintiff may not have defined "OCC" in the RFA, Plaintiff's Motion now makes clear that OCC references the Office of the Comptroller of the Currency. (DN 316, at PageID # 6473). The OCC "charters, regulates, and supervises all national banks and federal savings associations. . . ." *About Us*, OCC, https://www.occ.treas.gov/about/index-about.html. Because PNC should know whether it was a "registered" with the Office of the Comptroller of the Currency from 1977–1994, PNC must amend its answer to RFA No. 2.

11

IV. Conclusion

For the reasons above, the Court ORDERS as follows:

1. Plaintiff's Motion to Amend Scheduling Order (DN 285) is **DENIED**.

2. Plaintiff's Motion to Compel Discovery from PNC (DN 316) is **GRANTED** in part and **DENIED** in part to the extent outlined above. PNC Bank, N.A. will have fourteen (14) days to comply with the directives of this Order.

Regina S. Edwards, Magistrate Judge
United States District Court

December 1, 2022

Copies:        Counsel of Record

12