UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARY EITEL                                                                    **Plaintiff**

v.                                                        Civil Action No. 3:20-cv-12-RGJ

PNC BANK, N.A. ET AL                                                      **Defendants**

### MEMORANDUM OPINION & ORDER

Plaintiff Mary Eitel ("Plaintiff") moves the Court to reconsider/vacate/alter/amend its order granting costs to Defendants PNC Bank, N.A. ("PNC"), Wells Fargo Bank, N.A. ("Well Fargo"), Marilyn Casey Eitel ("Marilyn"), SouthState Bank, N.A. ("SouthState Bank") and SouthState Advisory, Inc. ("SouthState Advisory") (collectively "SouthState"). [DE 469, DE 471 Supplement]. Plaintiff also moves to stay compliance with the Court's order to pay costs pending her appeal. [DE 472]. Defendants have not responded to these motions and the time to do so has not passed, but the court finds responses unnecessary. For the reasons below, Plaintiff's Motion to reconsider/vacate/alter/amend [DE 469] is **DENIED**, and Plaintiff's motion for stay [DE 472] is **DENIED**.

### BACKGROUND

The facts surrounding Plaintiff's claims and litigation background are detailed in the Court's previous orders, [DE 415, DE 468], and will not be restated but incorporated by reference.

### I.      DISCUSSION

#### A.  Motion to Reconsider

Plaintiff moves under Fed. R. Civ. P. 60 for the Court to reconsider its order [DE 468] to pay Defendants' costs. [DE 430]. Plaintiff argues that some of SouthState's costs were

unreasonable and unnecessary and that she should not be ordered to pay any costs as a matter of equity. [DE 469].

    1.  <u>Standard</u>

Fed. R. Civ. P. 60(b) provides that a court may relieve a party from final judgment or order for several reasons including mistake, newly discovered evidence, fraud, a void judgment, or a satisfaction or release from a prior judgment. Fed. R. Civ. P. 60(b)(1–5).

    (1) mistake, inadvertence, surprise, or excusable neglect;

    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

    (4) the judgment is void;

    (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

    (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  A Rule 60(b) motion may not be used to relitigate the merits of a claim. *Barnes v. Clinton*, 57 F. App'x 240, 241 (6th Cir. 2003).

    2.  <u>Analysis</u>

      *a.  SouthState Deposition Costs*

Plaintiff first argues that her RICO claim against SouthState did not warrant SouthState's recovery of costs for deposition transcripts for PNC's corporate representatives, Greg Evans and Linda Clark, or Wells Fargo's witnesses, Rene Lamar (liability), Robert Valker (damages), and Jennifer Hagain (corporate representative). [DE 469 at 16542–45].  Plaintiff argues that her RICO claim against defendants relied on a common actor, Paul Eitel Jr., who led the enterprise and

caused each trustee over the years to prevent Plaintiff from receiving information and that the different trustees, PNC, Wells Fargo, and SouthState had no connection.  [*Id.*]  As stated in the court's previous opinion, the court examines necessity of a deposition transcript "as of the time of taking, and the fact that a deposition is not actually used at trial is not controlling," *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989), and depositions "taken within the proper bounds of discovery" are routinely found to be "necessarily obtained for use in the case." *Allen v. Highlands Hospital Corp.*, No. 4-269, 2009 WL 10711811, at *2 (E.D. Ky. Mar. 24, 2009).  Plaintiff alleged in her RICO claim, Count 1 of her second amended complaint, that "Junior, Marilyn . . . South State . . .[and] Wells Fargo . . . acted as an association in fact to commit criminal acts . . . all in an effort to deprive Plaintiff of valuable assets . . ." [DE 104, Sec. Am. Comp. at 1639].  Plaintiff defined these defendants as "Enterprise Defendants" that "constitute[] an ongoing organization whose member functioned as a continued unit for a common purpose of achieving the objectives of the enterprise." [DE 104 at 1640].  She alleged they "devised and participated in a scheme to defraud" her. [DE 104 at 1641].

As before, these deposition costs were reasonable and necessary for SouthState to incur in defending against Plaintiff's claims, particularly the RICO claim, which as set forth above alleged SouthState was involved in a RICO scheme with Wells Fargo and other defendants to defraud Plaintiff.  Plaintiff also testified in her deposition in response to a question about the basis for alleging a RICO enterprise that even though "PNC may not be named in this part, but we may need to file an amended complaint, because I did not know that PNC had started the asset removal program." [DE 455-3]. SouthState had legitimate need to review and evaluate that testimony of the PNC and Wells Fargo witnesses even if not utilized for summary judgment.  Witnesses for other defendants alleged to be enterprise defendants were relevant to the enterprise element of

Plaintiff's RICO claim. And if the substance of these depositions demonstrated that there was no "zero connection" between SouthState and Wells Fargo or PNC, then they would have been relevant for rebutting Plaintiff's RICO claim at trial. Plaintiff also attempted to prove through the PNC depositions her conspiracy theory that the predecessor to SouthState's counsel in this case, Stoll Keenon Ogden, transferred the Trusts from PNC Bank to another trustee without Plaintiff's knowledge. [DE 455-1, DE 455-4]. Liability witnesses, including PNC's corporate representatives, were relevant to Plaintiff's knowledge of her claim for purposes of the statute of limitations for Plaintiff's RICO claim and for purposes of rebutting Plaintiff's theories involving SouthState's counsel. In short, the deposition costs were necessary.

### b. *Plaintiff's Ability to Pay*

Second, Plaintiff argues that she cannot pay the costs taxed. The Sixth Circuit has "identified several factors a losing party may put forward that may be sufficient to justify a district court in overcoming the presumption in favor of a cost award, including the losing party's good faith, the difficulty of the case, the winning party's behavior, and the necessity of the costs." *Singleton v. Smith*, 241 F.3d 534, 539 (6th Cir. 2001). "Although the ability of the winning party to pay his own costs is irrelevant, another factor weighing in favor of denying costs is the indigency of the losing party." *Singleton*, 241 F.3d at 539 (citations omitted). Indigency is but one factor and does not provide an automatic basis for denying costs against an unsuccessful litigant. *Singleton*, 241 F.3d at 538. The burden is on the losing party to show that she is unable, as a practical matter and as a matter of equity, to pay the defendant's costs." *Tuggles v. Leroy–Somer, Inc.*, 328 F.Supp.2d 840, 845 (W.D.Tenn.2004) (citation omitted). "To invoke the inability to pay factor, a party must demonstrate not merely that payment would be a burden, but that she is indigent." *Id.* (citation omitted). "A party is indigent if she is 'incapable of paying the court-imposed costs at

this time or in the future.'" *Id.* (quoting *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir.1994)). "The losing party, however, must show an inability to pay to overcome the presumption that the prevailing party is entitled to recover costs. Such a showing can be made upon providing actual documentation of the inability to pay." *Lewis v. United States*, No. 02–2958 B, 2006 WL 1628091, at *2 (W.D.Tenn. Apr. 7, 2006) (quoting *Richins v. Deere & Co.*, 229 F.R.D. 189, 192 (D.N.M.2004)).

As an initial matter, Plaintiff cites the ability of defendants to pay their own costs and the disparity in the parties' resources as a basis to deny costs. [DE 469 at 16540]. This is irrelevant to the analysis. *Singleton*, 241 F.3d at 539.

Plaintiff claims she cannot pay the costs. [DE 469]. Plaintiff submits a report from Dr. Daniel Miller in support. [DE 469-1]. The court has reviewed the report. Dr. Miller is a clinical psychologist in the business of assessing patients for psychological disorders, including assessment for patients seeking declaration as disabled in pursuit of disability assistance from the State of Kentucky. Plaintiff was referred to Dr. Miller "to assess [Plaintiff's] current and past cognitive and functional abilities to manage her day-to-day activities, including whether she has been or currently is able to identify, investigate, or protect her legal rights, including whether she is able to exercise due diligence to investigate her rights, namely in a family trust established by her grandparents." [DE 469-1 at 16569]. The court has reviewed Dr. Miller's "summary and conclusions." Dr. Miller notes Plaintiff is 67 years old and divorced since 1995. He concludes based on an October 13, 2024 examination of Plaintiff, information provided by Plaintiff's son (also counsel of record for Plaintiff), and his previous examination of her in 2017, that Plaintiff has severe ADHD, and that as a result of her severe ADHD, he questions whether Plaintiff "has due diligence to manage her legal affairs or to understand her legal rights without help from her

5

son," and that he believes Plaintiff "is a candidate for medication to manage ADHD, coupled with therapy to address her copying skills and executive functioning." [DE 469-1 at 16577-78].

Dr. Miller's report contains a number of items about Plaintiff's financial and work history, most of which appears to be unverified and provided by Plaintiff or her son:  (1) that she worked as a stockbroker from 1979 to 1998, worked as real estate broker from 1991 to 2003 and has not been employed as a W-9 workers since 1990, (2) that she is currently unemployed, (4) she has received government food assistance, and (4) that she received social security disability beginning in 2007 (but may have received back pay for disability from 2004-2007 – the report is unclear on this point) until she turned 65 and that Plaintiff reported her social security disability is "[n]ow . . . converted to retirement." [DE 469-1].

Even assuming Plaintiff is "retired, disabled, and unemployable" as she claims, neither Dr. Miller's report nor Plaintiff provide sufficient details of her financial situation to show that she cannot pay the court-imposed costs at this time or in the future. *Lewis*, 2006 WL 1628091, at *2. It appears from Dr. Miller's report that Plaintiff is 67 years old, unemployed, and receives social security disability income.  However, Plaintiff has not provided specific details as to the amount of income she receives, her expenses, and her liabilities.  Nor does Plaintiff provide any detail and documentation about her assets. In short, the information provided by Plaintiff is insufficient to determine that she is indigent and cannot pay the taxed costs. While Dr. Miller's report provides some information, it does not complete Plaintiff's burden to make to show indigency.  However, under these circumstances, it may be appropriate for the parties to work out a plan for the payment of costs. *Santiago v. Meyer Tool Inc*., No. 1:19-CV-32, 2024 WL 3638116, at *2 (S.D. Ohio Aug. 2, 2024), report and recommendation adopted, No. 1:19-CV-32, 2024 WL 3926981 (S.D. Ohio Aug. 22, 2024) (noting some "[c]ourt have also ordered or otherwise encouraged parties to devise

payment plans, with or without court intervention."); *Tuggles,* 328 F. Supp. 2d at 845 (declining to waive an award of costs based on plaintiff's financial condition but encouraging an agreed upon payment plan).

### B.    Motion to Stay

Plaintiff also moves the court to stay taxation of costs pending this court's ruling on her motion to reconsider and pending appeal. [DE 472]. The Court is mindful that "[a] stay pending appeal is a matter of judicial discretion, 'not a matter of right.'" *Memphis A. Philip Randolph Institute v. Hargett*, 977 F.3d 566, 568 (6th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009).   In determining whether to issue a stay under Rule 62(d), courts consider: "(1) the likelihood that the party seeking the stay will prevail on the merits; (2) the likelihood that the moving party will be irreparably harmed; (3) the prospect that others will be harmed by the stay; and (4) the public interest in the stay." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (citing *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006)).   These four factors are not prerequisites to a stay; they are "interrelated considerations that must be balanced together." *Hargett*, 977 F.3d at 568 (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Grepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

As to prevailing on the merits, Plaintiff argues this court "missed the fact one of the Eitel Trusts . . . was not even arguably a broad encroachment clause . . . contrary to the findings supporting its ruling on summary judgment." [DE 472].   But as reiterated previously, the Court ultimately ruled Plaintiff's claims were time barred and did not address the merits of the parties' arguments as to the language of the trusts' and whether they shielded any trustee from liability. [DE 415 DE 468,].   Plaintiff continues to make arguments previously rejected by the court or that

were not reached by the court.  Likelihood of prevailing on the merits does not support a stay. Likewise, Plaintiff makes no showing that she will be irreparably harmed absent a stay.

Plaintiff also argues defendants will not be prejudiced by a stay.  But Plaintiff moves for an unsecured stay pending appeal, arguing she cannot pay the taxed costs, and not presenting a security bond.  Fed. R. Civ. P. 62(d) provides that "an appellant may obtain a stay by supersedeas bond . . . [t]he bond may be given upon or after filing the notice of appeal . . . the stay takes affect when the court approves the bond." The absence of a bond, coupled with Plaintiff's allegation that the costs are financially burdensome, make it less likely that Defendants will be paid their costs should they prevail on appeal. Plaintiff does not address the public interest, but it is in the public interest to promote respect for the Court's judgments.  The factors and equities in this case weigh against granting an unsecured stay and Plaintiff has not offered to post a bond.  Accordingly, the motion to stay will be denied

## II.       CONCLUSION

For the reasons above, the Court **ORDERS** as follows:

1.  Plaintiff's motion to reconsider/vacate/alter/amend [DE 469] is **DENIED**.

2.  Plaintiff's motion for stay [DE 472] is **DENIED**.

November 12, 2024

Rebecca Grady Jennings, District Judge
United States District Court

Cc:  Sixth Circuit Court of Appeals, 24-6000

8