UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00012-RGJ

**MARY EITEL**                                                                                       **PLAINTIFF**

**VS.**

**PNC BANK, NA, et al.**                                                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Mary Eitel's ("Eitel's") Transcript Request. (DN 476). Defendant SouthState Bank, N.A. and SouthState Advisory, Inc. (collectively, "SouthState") objected to the request. (DN 477). Eitel filed a reply. (DN 478). The District Judge referred the Transcript Request to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and (b)(3) for her determination or report and recommendation, as may be appropriate. (DN 480). The undersigned will address the Transcript Request in a Memorandum Order and Opinion because the matter is not dispositive in nature.

## I. Background

This case involves the administration of three trusts created by Eitel's grandparents and for which Eitel was a remainder beneficiary. (DN 104, at PageID # 1589). Eitel claims that Defendants SouthState, Wells Fargo, and PNC Bank mismanaged the trusts and breached their fiduciary duties owed to Eitel because Defendants depleted the trust's assets in favor of Eitel's late father and his wife, another defendant to the case. (*Id.*). Eventually, on February 24, 2023, the District Court entered an order and judgment in favor of the Defendants. (DNs 415, 416). Eitel filed a motion to

reconsider/vacate/alter/amend, but the District Court denied the motion on September 30, 2024. (DN 468). Eitel filed a notice of appeal on October 30, 2024. (DN 473, *see* DN 474).[1]

## II. Discussion

On December 24, 2024, Eitel filed the Transcript Request with the Court. (DN 476). Pursuant to Federal Rule of Appellate Procedure ("Rule") 10 and "Court Orders from the 6th Circuit Court of Appeals as it pertains to orders of transcripts," Eitel seeks to reconstruct the record of several unrecorded telephonic status conferences ("TSCs") held before the Court. Her request contains unsworn declarations of the proceedings for the conferences based on counsel Leon H. Horne, III's ("Horne's") and Eitel's own recollection of the TSCs. (*See* DNs 476-1, 476-2).[2] While both declarations discuss matters outside of specific TSCs, Horne's declaration specifically discusses the TSCs held on June 25, 2021, August 2, 2021, and September 7, 2022. (DN 476-1). Eitel's declaration specifically discusses TSCs held on July 22, 2020 and September 7, 2022. (DN 476-2). Both declarations were signed under penalty of perjury. (DNs 476-1, 476-2). Eitel moved for the District Court to "review the attached affidavits/declarations and certify them as the Court Record transcripts of magistrate [judge] hearings and to submit them to the 6th Circuit Court of Appeals for use on appeal." (DN 476, at PageID # 16616).

Essentially, Eitel appears to be attempting to demonstrate the following.

(1) During TSCs held on June 25, 2021 and August 2, 2021, Eitel "emphasized the voluminous nature of the material to be reviewed and logged and need for more time for production, but Judge Edwards refused [Eitel's] request and offer for a staggered production and forced [Eitel] to produce roughly one-thousand log entries after review of over 22,000 email communications by a solo-practitioner within 5 weeks of the first teleconference" (DN 476-1, at PageID # 16619);

---

[1] A comprehensive review of the background of this case can be found at DNs 415, 468.
[2] Eitel notes that "[d]ue to a federal holiday, notarial services were unavailable so the served/filed documents are 'Unsworn Declarations' which are functional equivalent of Sworn Affidavits pursuant to 28 U.S.C. 1746." (DN 746, n. 1).

2

(2) Following the September 7, 2022 TSC, the undersigned omitted Eitel's arguments regarding scheduling deadlines, specifically Eitel's statements that he could not possibly respond to all of the motions "given their foreseeable length and voluminous attachments in pagination." (DN 476-1, at PageID # 16620; *see* DN 476-2, at PageID # 16652);

(3) Eitel requested a staggered deadline schedule for her responses to dispositive motions "both during the September 7, 2022 hearing as well as in prior telephonic hearings before Magistrate Judge Edwards and in separate conferences with Defendants' counsel," (*Id.*) but the undersigned and SouthState rejected this "relief," which "lead[] to an inundation of thousands of pages of briefing and exhibits to be reviewed and responded to by [Horne] as a solo-practitioner." (*Id.*). Eitel did not agree to the schedule that was determined during the September 7, 2022 TSC nor deemed it appropriate. (*Id.*);

(4) The undersigned and SouthState's attorney had a "CLOSE FAMILIARITY." (DN 476-2, at PageID # 16652).

SouthState objected to Eitel's transcript request, arguing that the Court "may rely on their own recollections of those hearings, and they are not required to give any lawyer's notes more weight than their own recollection." (DN 477, at PageID # 16662). Additionally, SouthState argued that the Court should reject both "those portions of the unsworn declarations that do not purport to describe what happened in the status conferences" as well as the "allegations concerning the status conferences on June 30 and August 2, 2021." (*Id.*, at PageID # 16664-66). Finally, it argues that the Court should reject the allegations that Eitel requested "staggered" deadlines to respond to SouthState's dispositive and *Daubert* motions. (*Id.*, at PageID # 16667).

Eitel's reply argues that SouthState did not "attach or cite to counter-affidavits or actual evidence," but instead "resort[ed] to the unmoving argument of 'the record speaks for itself.'" (DN 478, at PageID # 16673). Eitel argues that SouthState's objection "amounts to nothing of substance or consequence which the District Court may utilize to resolve, correct, or confirm the record." (DN 478, at PageID # 16674). She accuses SouthState of "[o]mit[ting] [f]acts from [d]iscovery [c]onferences of [c]ounsel" and of continuing to "misstate the [c]ontextual [f]acts." (*Id.*, at PageID

3

# 16675-77). Additionally, Eitel alleges that "[t]he [r]ecord [o]mits [p]ertinent [i]nformation." (*Id.*, at PageID # 16676). Finally, Eitel argues that the law that SouthState cites is "unpersuasive, uncited, or lacking authority." (*Id.*, at PageID # 16678).

### A. Federal Rule of Appellate Procedure 10

Rule 10 governs the record on appeal. To adjudicate its appeal, an appellant must order "a transcript of such parts of the proceedings not already on file as the appellant considers necessary" or "file a certificate stating that no transcript will be ordered." Fed. R. App. P. 10(b)(1). If a transcript or hearing is not available, Rule 10(c) provides that the appellant may substitute such a transcript with a prepared "statement of the evidence or proceedings from the best available means, including the appellant's recollection." *Id*. The appellee may then object to the appellant's "statement of the evidence," which together must be submitted to the lower court "for settlement and approval." *Id*. Once "settled and approved," the clerk must include the statement in the record on appeal. *Id*.

The Court may rely on "its own recollection of events" when it reviews the parties' statements and "is not required to give more weight to a contemporaneously recorded lawyer's notes over its own recollection." *Malibu Media, LLC v. Ricupero*, No. 2:14-CV-821, 2016 U.S. Dist. LEXIS 153364, at *6-7 (S.D. Ohio Nov. 4, 2016) (citing *United States v. Caramadre*, 807 F.3d 359, 376-77 (1st Cir. 2015)). A court within the Sixth Circuit has noted that the phrase "settlement and approval" in Rule 10(c) "does not require the Court to ignore case-related matters within its own knowledge." *Id*.

One court found that, where a description of what transpired during the proceedings is memorialized through a "court order, minute entry, clerk entry or similar finding," an appellant's statement of its own recollection is not the "'best available means' to show the content of those

4

proceedings" under Rule 10(c). *Blakely v. Carmax Auto Superstores, Inc.*, 2024 U.S. Dist. LEXIS 80622, at *4 (D. Kan. Apr. 29, 2024). Another court refused to settle and approve a litigant's proposed statement of the evidence under Rule 10(c) because "nearly nineteen months [had] elapsed [since] the date of the in-chambers conference" and the court was "unable to remember the specifics of the conference with sufficient clarity." *United States v. Cramer*, No. 1:16-CV-26, 2020 U.S. Dist. LEXIS 80622, at *4 (E.D. Tex. Jan. 30, 2020).

Finally, under Rule 10(e), "[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded" to the Court of Appeals by the trial court. Fed. R. App. P. 10(e)(2)(B). The purpose of Rule 10(e) is "to allow the district court to correct omissions from or misstatements in the record for appeal, not to introduce new evidence in the court of appeals." *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 641 (6th Cir. 1982). This is to ensure that "the appellate record accurately reflects the record before the District Court." *Adams v. Holland*, 330 F.3d 398, 406 (6th Cir. 2003) (citation omitted); *see also Malibu Media, LLC*, 2016 U.S. Dist. LEXIS 153364, at *15 (rejecting request under Rule 10(e) because it was not intended to "correct an 'omission' or a 'misstatement' of what actually happened in the proceedings before this Court").

First, the Court notes that Eitel's statements relate to TSCs conducted by the undersigned. As a general matter, the undersigned does not electronically record TSCs. Exceptions to this general policy exist where counsel requests a TSC be recorded or where the Parties have warned the Court of disputes to be discussed during the TSC. "The provisions of Rule 10(c), however, have been held to apply to such conferences." *Malibu Media*, 2016 U.S. Dist. LEXIS 153364, at *8 (citing *U.S. v. Caramadre*, 807 F.3d 359, 375 (1st Cir. 2015)) (other citations omitted).

The undersigned will settle and approve a statement of the proceedings in light of Eitel's submissions, SouthState's objections, and its own recollection. In doing so, the undersigned keeps in mind that "the underlying purpose of a transcript is to provide a complete, true, and accurate record of what occurred at a proceeding" and that a transcript "would not be framed by the submission of background information nor would it explain actions taken following the proceeding." *Id.* at *9-10. Therefore, it will neither include Paragraphs 5, 6, or 8 of Horne's declaration[3] nor Paragraphs 4-10, 14, or 16-25 of Eitel's declaration[4] in its statement of proceedings.

Further, the undersigned will not consider the additional documents Eitel attempts to submit through her declaration, as the purpose of providing stipulations to the appellate court is "not to introduce new evidence in the court of appeals." *S & E Shipping Corp. v. Chesapeake & O. R. Co.*, 678 F.2d 636 (6th Cir. May 12, 1982) (citations omitted); (*See* DN 476-2). In other words, the undersigned will only consider the portions of the declarations that purport to describe what happened in the status conferences: Paragraphs 7 and 9 of Horne's declaration and Paragraphs 11, 12, 13, 15, and 16 of Eitel's declaration.[5]

---

[3] These paragraphs attempt to explain why certain TSCs occurred, the decisions made after TSCs, what the TSC consequences were, and/or to describe communications made outside of the TSCs.

[4] Paragraphs 4, 8, 9, 10, 11, 16, and 25 recite the procedural background of the action and/or offer Eitel's reactions to litigation. (*See* DN 476-2). Paragraphs 5, 6, 7, and 24 of Eitel's Declaration allege that an improper "close association" existed between the undersigned and counsel for SouthState but fails to describe anything that occurred during the proceedings. (*Id.*). Paragraph 14 argues over the consequences of the undersigned's alleged refusal to stagger Eitel's deadlines. (*Id.*). Paragraph 17 describes Eitel's alleged off-the-record communications. (*Id.*). Finally, Paragraphs 18-23 repeat Eitel's allegations against defense counsel's law firm made in a separate lawsuit, *Eitel v. Stoll Keenon Ogden, PLLC*, No. 23-CV-398 (W.D. Ky. June 5, 2025), but do not describe statements made in any proceeding in this action. (*Id.*).

[5] Paragraphs 1-4 of Horne's Declaration and Paragraphs 1-3 of Eitel's Declaration are not considered because they are simply background information used to certify the affidavit.

1. July 22, 2020 TSC

Eitel wishes to supplement the record regarding the July 22, 2020 TSC. Specifically, Eitel states the following in Paragraph 11 of her declaration: "THE MAGISTRATE [Judge] INTRODUCED HERSELF. THE SKO ATTORNEY, GENE VANCE ANNOUNCED HIMSELF, AND SAID TO THE MAGISTRATE [Judge], 'YOU KNOW ME'. [sic] THE MAGISTRATE [Judge] RESPONDED, 'YES.,' [sic] DEMONSTRATING THE CLOSE FAMILIARITY BETWEEN THE TWO." (DN 476-2, at PageID # 16652).

In its objection, SouthState does not state whether it agrees the exchange occurred between their counsel and the undersigned. The Court briefly summarized what transpired during the July 22, 2020 TSC in an order following the conference. (*See* DN 89). While the order did not include a memorialization of the alleged interaction between the undersigned and counsel for the defense, the undersigned does not find the quotations listed in Paragraph 11 inaccurate. Thus, in setting and approving the statement of proceedings, the Court will include these statements.

Similar to what Eitel stated in her already-excluded Paragraphs 6, 7, and 24, Paragraph 11 of her declaration characterizes the Court as having "close familiarity" with counsel for SouthState. While Eitel may have accurately recounted counsel for SouthState's statement that the undersigned knows him and that the undersigned responded "yes," Eitel's assessment of the interaction and attempt to include this interpretation in her statement of the proceedings "is not the type of information which should be included in a Rule 10(c) statement." *See Malibu Media, LLC,* 2016 U.S. Dist. LEXIS 153364, at *11. Consequently, in approving at settling the statement of proceedings, the undersigned will exclude the last sentence in Paragraph 11 of Eitel's declaration so that the paragraph only includes what was stated by the parties and by the undersigned.

2. June 30, 2021 and August 2, 2021 TSCs

Eitel wishes to supplement the record regarding the TSCs held on June 25, 2021 and August 2, 2021. Paragraph 7 of the Horne declaration states the following.

> During the [TSC] on June 25, 2021 before Judge Edwards and a second [TSC] before Judge Edwards on August 2, 2021, Plaintiff emphasized the voluminous nature of the material to be reviewed and logged and need for more time for production, but Judge Edwards refused Plaintiff's request and offer for a staggered production and forced Plaintiff to produce roughly one-thousand log entries after review of over 22,000 email communications by a solo-practitioner within 5 weeks of the first telephonic conference.

(DN 476-1, at PageID # 16619).[6]

The Court briefly summarized the June 30, 2021 TSC and the August 2, 2021 TSC in orders issued shortly after each TSC. (*See* DNs 175, 186). Additionally, a contemporary description of the discovery Horne was reviewing was previously provided in Eitel's Motion to Amend Scheduling Order on May 18, 2021. (*See* DN 154, at PageID # 2165-66).[7] The discovery to be reviewed by Horne and the status of the parties' dispute was also mentioned in several status reports filed in June, July, and August 2021. (*See* DNs 170, 177, 180, 184, 187). Because information regarding the discovery Horne reviewed already appears in this Court's record, the undersigned orders that the information not be repeated in a supplement to the appellate record.

---

[6] No TSC was held on June 25, 2021. The TSC originally scheduled for June 25, 2021 was held on June 30, 2021. (*See* DNs 171, 172, 175).

[7] "[T]he parties have diligently sought out discovery and [sic] in the process of reviewing and producing information and documents, but the nature of the case necessitates additional time for all parties to identify, find, review, and respond to each other. Namely, [Eitel's] case involves a course of conduct and hundreds if not thousands of transactions over an almost 40 year period across multiple states and over a half dozen financial institutions. [Eitel's] claims also present unique yet highly specific legal and factual allegations rooted in complex trust administration and the efficacy of discretionary distributions as well as artifices to deploy facially legal means to accomplish fraudulent or self-serving ends uncontemplated by the legal instruments governing the trusts and the actors involved. [Eitel] continues to diligently do her best to meet her burdens under the Federal Rules of Civil Procedure, which does not take into account the fact Mary is represented by one solo attorney . . . .")). (DN 154, at PageID # 2165-66).

Additionally, Horne's Paragraph 7 statement alleges the undersigned "refused Plaintiff's request and offer for a staggered production." (DN 476-1, at PageID # 16619). This allegation is not reflected in the parties' status reports from that time. (*See* DNs 177, 180, 184, 187). In fact, Eitel's alleged request for a staggered deadline contradicts Eitel's own filings in which Eitel noted she and SouthState were "in the midst of working out the details of a rolling production of F.R.C.P. 26(b)(5) privilege log." (DN 184 (Eitel noted that "[s]uch rolling production was in fact suggested by the Court at the most recent status conference"); *see* DN 187 (claiming Horne "continues to prepare and serve Plaintiff's privilege log on a rolling basis as suggested by the Court on the August 2nd conference calls")). Further, the undersigned's orders describing the June 30, 2021 and August 2, 2021 TSCs show that the parties were still engaged in a dispute over how long to extend fact discovery. (*See* DNs 175, 186). Based on these records, it is improbable that the TSCs at issue contained discussions as to whether to stagger Eitel's responses to dispositive motions at that time. In approving and settling the statement of proceedings, the Court will exclude the Paragraph 7 discussion of a "staggered" production.

Finally, Horne's declaration that the undersigned "forced Plaintiff to produce roughly one-thousand [privilege] log entries after review of over 22,000 email communications by a solo-practitioner within 5 weeks of the first telephonic conference" repeats what was already stated on the record in an order entered by the undersigned. (*Compare* DN 476-1, at PageID # 16619, *with* DN 186 ("After hearing from the parties, the Court instructed Plaintiff Mary Eitel to produce a completed privilege log to all defendants in this action on or before **August 9, 2021**.") (bold in original)). Further, the fact that Horne was a solo practitioner is extraneous information that was already mentioned in the record. (*See* DN 367, at PageID # 11457 ("'[T]he excuse of being a solo practitioner is as good as no excuse at all.' [Eitel] has repeatedly attempted to lean on her counsel's

9

solo-practitioner status as a reason for needing additional time.") (citations omitted)). Accordingly, the Court finds that the existing record is the best available means to describe the order issued following the August 2, 2021 TSC.

In sum, the undersigned orders that the entirety of Paragraph 7 of Horne's declaration be excluded from the statement of the proceedings.

### 3. Status Conference Held September 7, 2022

Both Horne and Eitel provided their recollection of the TSC held on September 7, 2022. Paragraph 9 of the Horne declaration states the following.

> On September 7, 2022, Magistrate Judge Regina Edwards, sua-sponte, held a [TSC] and subsequently filed a text-order[.] ([DN] 318). Judge Edwards [sic] text-order ([DN] 318) materially omitted the arguments and statements of Plaintiff's counsel as it pertained to the schedule of the case deadlines. Specifically, Judge Edwards [sic] text order simply recites "The parties have indicated they will continue moving the case forward with the scheduling order that contains a 9/15/2022 deadline for dispositive motions," yet such text-order completely omits Leon H. Horne, III's explicit and strenuous statements that his ability, as sole counsel, to respond to all of the motions was impossible given their foreseeable length and voluminous attachments in pagination. The District Court record plainly demonstrates Mr. Horne's concerns were substantiated by the voluminous filings by all of the Defendants for summary judgment and Motions to Exclude. Leon H. Horne, III further requested for a schedule, both during the September 7, 2022 hearing as well as in prior telephonic hearings before Magistrate Judge Edwards and in separate conferences with Defendants' counsel to stagger the deadlines for Plaintiff's responses to dispositive motions, such relief rejected by Judge Edwards and all Defendants' counsel, leading to an inundation of thousands of pages of briefing and exhibits to be reviewed and responded to by Leon H. Horne, III as a solo-practitioner. At no time did Plaintiff's counsel, Leon H. Horne, III, ever agree the schedule during the September 7, 2022 hearing was appropriate or "agreed to."

(DN 476-1, at PageID # 16620).

Eitel provided her recollection of the TSC in the following two paragraphs.

> ON 9/7/2022, I WAS ON THE CALL FOR THE [TSC] WITH THE MAGISTRATE JUDGE REGINA S. EDWARDS. MY ATTORNEY, LEON

10

> HORNE, III INFORMED THE COURT CLEARLY THAT THERE WAS NO WAY HE COULD ANSWER ALL THE MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO EXCLUDE THAT THE NUMBEROUS DEFENDANTS WERE PLANNING TO FILE, ON THE SAME DATE.
>
> ON 9/9/2022, I WAS SHOCKED TO SEE THE MAGISTRATE [Judge] ENTERED A REPORT FROM THE TELEPHONIC STATUS CONFERENCE OF 9/7/2022, STATING THAT, "THE PARTIES HAVE INDICATED THEY WILL CONTINUE MOVING THE CASE FORWARD WITH THE SCHEDULING ORDER THAT CONTAINS A 9/15/2022 DEADLINE FOR DISPOSITIVE MOTIONS." THAT IS NOT TRUE. I AM A PARTY, AND MY ATTORNEY STATED CLEARLY THERE WAS NO WAY HE COULD ANSWER ALL THESE MOTIONS AT ONCE. HE HAD BEEN REQUESTING STAGGERED DUE DATES ALL THROUGH THE LITIGATION AND WHEN MOTIONS TO AMEND THE SCHEDULE WERE TO THOPIC [sic] OF NUMEROUS CONFERENCES WITH THE MAGISTRATE [Judge] AND THE PARTIES.

(DN 476-2, at PageID # 16652).

Eitel requests that the Court modify the record due to omissions and misstatements of what happened in the September 7, 2022 TSC. Horne states that the resulting order omitted his "explicit and strenuous statements" that he could not possibly respond to all of the motions "given their foreseeable length and voluminous attachments in pagination. (DN 476-1, at PageID # 16620). To support his concerns, Horne references the record which includes "voluminous filings by all of the Defendants for summary judgment and Motions to Exclude." (*Id*.). Eitel, who states that she was present during the September 7, 2022 TSC, declared that the order contained false statements and agrees that Horne expressed that he could not "ANSWER ALL THESE MOTIONS AT ONCE." (DN 476-2, at PageID # 16652). Overall, Horne states that he did not agree to the schedule listed in the order following the September 7, 2022, and this disagreement was omitted from the order. (DN 476-1, at PageID # 16620).

11

Horne's declaration alleges he requested a staggered deadline for Eitel's responses to dispositive motions. (DN 476-1, at PageID # 16620). Eitel declared that Horne "HAD BEEN REQUESTING STAGGERED DUE DATES ALL THROUGH THE LITIGATION AND WHEN MOTIONS TO AMEND THE SCHEDULE WERE TO THOPIC [sic] OF NUMEROUS CONFERENCES WITH THE MAGISTRATE [Judge] AND THE PARTIES." (DN 476-2, at PageID # 16652).

SouthState argues that its contemporaneous notes from the TSC "reflect that Horne did not offer any new arguments on the litigation schedule, only that Horne rested on his previous filings on that issue." (DN 477, at PageID # 16669).[8] Eitel's filings around this time did not request a staggered briefing scheduled. (*See, e.g.,* DN 314). In fact, in an earlier motion to extend the expert discovery deadlines, Eitel requested a *uniform* extension of the dispositive briefing deadline to October 2022. (DN 308 ("[Eitel] seeks leave of the Court for the following schedule modifications . . . [e]xtension of time to October 15, 2022 to file Dispositive and Daubert motions to account for the time necessary for Plaintiff to receive all transcripts back for all expert depositions of South State Bank, N.A. and South State Advisory, Inc."). Additionally, the order describing the TSC does not indicate that Horne requested staggered response deadlines to the forthcoming dispositive or *Daubert* motions. (DN 318). Indeed, the undersigned's order stated that "the parties have indicated they will continue moving the case forward with the scheduling order that contains a September 15, 2022, deadline for dispositive motions." (*Id.*).

---

[8] In her reply, Eitel states "South State's secondary counsel, Adam Reeves, Esq. ("**Mr. Reeves**"), simply states in the Response that his notes he allegedly took during telephonic status conferences, conferences in which he did not even personally participate, as not reflecting what [Eitel's] affidavits state is the record of the proceeding." (DN 478, at PageID # 16674 (bold in original)). But Adam Reeves is listed as a participant in the September 7, 2022 TSC. (*See* DN 318). Therefore, Eitel's argument against Mr. Reeves' contemporaneous notes fails. SouthState does not rely on Mr. Reeves' contemporaneous notes elsewhere in SouthState's objections to Eitel's transcript request. (*See* DN 477).

After the order was entered, this characterization of the parties' agreement was not appealed or otherwise challenged or disputed by Eitel. Instead, on two occasions, Eitel requested a uniform extension of the briefing schedule for her responses to all the pending dispositive or *Daubert* motions. (DNs 332, 350). Both times, the Court allowed an extension. (DNs 338, 355). Eitel's third request for more time, filed on November 16, 2022, was the first time Eitel asked to stagger her deadlines to respond to the remaining motions that had been filed against her. (DNs 360, 360-1). The request was granted in part.[9] (DN 367). Noting all of this, SouthState argues that "whether under Rule 10(c) or Rule 10(e), this Court must reject Eitel's belated but inaccurate allegations that she requested staggered response deadlines in any of the status conferences with the Magistrate Judge." (DN 477, at PageID # 16670).

Eitel's reply doubles-down on her assertion that the undersigned's post-TSC order "completely fails to state Mr. Horne's strenuous objection to the schedule and repeated statements it would be impossible for Mr. Horne, as solo-counsel, to respond to seven dispositive and Daubert defense Motions, file [Eitel's] own three Daubert motions, and respond to multiple motions to exceed page limits – all simultaneously -by [sic] the time required under the rules, as lengthy motions were predictably expected and were filed by all the Defendants." (DN 478, at PageID # 16676). She even claims that counsel for SouthState "agreed off-the-record and out of the presence of the judge of course, after the [TSC] and via email that additional time would only be fair . . . ." (*Id*.). While Eitel admits that she did not seek staggered deadlines "via written motion early on in the litigation," she explains that "this was due to the constraints of attempting to perform swift sets of more than 12 depositions in more than four states and document exchange during discovery . .

---

[9] Although the Court found that Plaintiff failed to show exceptional circumstances to warrant a further extension of time, "[b]ecause Plaintiff filed [her] motion on the deadline to respond, and more than 10 days has already passed since that filing, the Court [] allow[ed] Plaintiff until November 29, 2022, at 5:00 pm, EST, to file pending responses." The order was issued on November 28, 2022.

13

. .." (DN 468, at PageID # 16677). Eitel argues that, because of these constraints, "there can be no legitimate claim by [SouthState] that [Eitel] did not seek fundamentally staggered and lengthier response times during numerous scheduling conferences prior to the filing of motions to the Court unless they present counter-affidavits or evidence to the contrary." (*Id.*).

It appears Eitel is asking the Court to ignore what has already been reported and ordered on the record and, instead, accept her self-serving representations of events which happened over two years earlier. What Eitel suggests really occurred in the September 7, 2022 TSC is not supported by the resulting order by the Court or filings from the parties. The Court finds that the record adequately reflects what happened during the September 7, 2022 TSC and that Rule 10(e) does not support the supplementation of the record requested by Eitel at it relates to the September 7, 2022 TSC. Further, any information that was already included in the undersigned's previous orders should be excluded from this supplement. Likewise, statements describing Eitel's emotions should be excluded. Therefore, the Court will exclude the entirety of Paragraph 9 of Horne's declaration and of Paragraphs 15 and 16 of Eitel's declaration from the statement of proceedings.

### 4. Eitel's Other Sworn Statements

Additionally, without citing to specific TSC dates, Eitel alleged the following in Paragraphs 12 and 13.

> I REMEMBER MY ATTORNEY, LEON HORNE, III, RECOMMENDING NUMEROUS TIMES, ON THE MAGISTRATE [Judge] CALLS, THAT THE RESPONSE DEADLINES FOR THE PLAINTIFF ON SUMMARY JUDGMENT MOTIONS AND DAUBERT MOTIONS BE STAGGERED, BECAUSE THERE WERE NUMEROUS DEFENDANTS, AND IT WOULD NOT BE POSSIBLE FOR THE PLAINTIFF TO RESPOND TO ALL THE DEFENDANTS DISPOSITIVE AND DAUBERT MOTIONS ON ONE DATE.
>
> THE DEFENDANTS INSISTED THAT ALL THE RESPONSES SHOULD BE DUE ON ONE DATE. THE MAGISTRATE [Judge] DICTATED THAT ALL THE RESPONSES WOULD BE DUE ON ONE DATE.

14

(DN 476-2, at PageID # 16652).

These allegations do not identify the date the statements were supposedly made or any other information that ties these allegations to a specific proceeding. Thus, Paragraph 12 of Eitel's declaration does not include enough information to be considered in supplementing the record. The information in Paragraph 13 is duplicative of the undersigned's orders, which already appear on the record. (*See* DN 186). Therefore, the Court will exclude Paragraphs 12 and 13 of Eitel's declaration from the statement of proceedings.

Similarly, in her reply, Eitel argues "Mr. Reeves intentionally omits the conference-calls pursuant to local rules which occurred throughout the litigation between [Eitel's] counsel and South State's first-chair – Palmer Gene Vance II – in which [Eitel's] counsel on numerous occasions sought to confer, by rule, to discuss staggering dispositive motion and Daubert deadlines." (DN 478, at PageID # 16675). But Eitel, herself, does not include sufficient information to include these conference-calls on the record, including the dates these calls took place. More importantly, the Court would have had no role in these calls so the undersigned could not certify those conversations. Therefore, the undersigned will not include the alleged conference calls between the parties in the statement of proceedings.

### B. Whether SouthState Misstated Contextual Facts

SouthState indicated that "this Court rightly refused to reconsider the Judgment in the SouthState Defendants' favor, both because Eitel abandoned her claims and because those claims failed on their merits." (DN 477, at PageID # 16657 (citing DN 468)). Eitel's reply accuses SouthState of towing "a very dangerous line with blatant disregard for truth" when it claimed that "the District Court dismissed [Eitel's] claims against South State rightly on the merits." (DN 478, at PageID # 16677 (citing DN 477, at PageID # 16657)). Eitel states that her claims against

15

SouthState were not dismissed on the merits but were ruled abandoned by the District Court. (DN 478, at PageID # 16677). Eitel argues the Court should respond to SouthState's misstatement by giving "strong deference" to Eitel. (DN 478, at PageID # 16677-78).

Eitel is partially correct – her claims against other defendants were dismissed on the merits, but the Court's final judgment rejecting Eitel's claim was for procedural reasons. (*See* DN 415). Still, while the Court recognizes Eitel's claims against SouthState were dismissed on procedural grounds, SouthState's incorrect statement regarding dismissal does not warrant "strong deference" to Eitel in determining the statement of proceedings.

### C. SouthState's Use of Unpublished Cases

Eitel argues that the Court should not consider the unreported cases SouthState uses in its arguments because they are not persuasive or precedential and SouthState did not attach the cases with the filing. (DN 478, at PageID # 16674).

While the Court need not follow cases that do not provide precedential authority, it may use such cases as persuasive authority to inform its decision. *See Mayes v. City of Oak Park*, No. 5-CV-74386-DT, 2007 U.S. Dist. LEXIS 4391, n. 2 (E.D. Mich. Jan. 22, 2007) (citing *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002); *United States v. Webber*, 208 F.3d 545, 552 (6th Cir. 2000)) ("While unpublished cases have no precedential value, they often carry persuasive weight. Thus, the court may consider unpublished cases as persuasive authority although not controlling authority."). Additionally, contrary to Eitel's argument (*see* DN 478, at PageID # 16678), SouthState cites to at least two cases decided by the Sixth Circuit, which *are* precedential authority to this Court. (*See* DN 477, at PageID # 16663-64 (citing *S & E Shipping Corp. v. Chesapeake & O. R. Co.*, 678 F. 2d 636 (6th Cir. 1982); *Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003)). Eitel seems to suggest that the Sixth Circuit cases cited by SouthState "merely outline the parameters

16

of the District Court's authority but they do not in any way, shape, or form [sic] instruct the District Court to take a specific action." (DN 478, at PageID # 16678). Even if that is true, the Court may still consider the cases in its decision.

Finally, Eitel argues that "South State failed to prove-up or sufficiently attach uncited and non-public citations which are unavailable to [Eitel] to review and respond to appropriately . . . so the District Court should refuse to give any value or credence to such citations, including but not limited to *Cramer*, *Blakely*, or *Malibu*." (DN 478, at PageID # 16678).

When the Federal Rules of Appellate Procedure "provide for filing a motion or other document in the district court, the procedure must comply with the practice of the district court." Fed. R. App. P. 1(a)(2). A Joint Local Rule of Civil Practice for the United States District Courts for the Eastern and Western Districts of Kentucky ("LR") states that "[i]f a motion, response, or reply contains a citation to any authority not available electronically, a copy of the authority must be attached." LR 7.1(h). The cases cited by SouthState are all available electronically through commercial databases maintained by legal research services including Lexis Nexis and Westlaw. While the Federal Rules of Appellate Procedure do not apply here, their use of a similar rule is illuminating: Rule 32.1(b) does not require a party to file and serve an opinion which is available in a publicly accessible electronic database. The notes to Rule 32.1 established that a publicly accessible electronic database includes a commercial database maintained by a legal research service. Fed. R. App. P. 32.1(b) advisory committee's note as added Apr. 12, 2006, eff. Dec. 1, 2006. The Court finds that, because the cases SouthState cites are available on the databases listed above, they are available electronically and, as a result, SouthState was not required to provide copies of such cases in its objections. Overall, the Court finds SouthState's use of cases proper and the undersigned considers the case law in its decision.

17

<u>III. Order</u>

The undersigned **GRANTS IN PART** Eitel's transcript request pursuant to Fed. R. App. P. 10. Specifically, the Court approves the following statement of the proceedings.

1. During the July 22, 2020 TSC, Magistrate Judge Regina S. Edwards introduced herself to the parties. Counsel for defense, Gene Vance, announced himself and said "you know me" to Judge Edwards. Judge Edwards responded "yes."

The undersigned **ORDERS** that all other statements included in Eitel's transcript request be excluded from the statement of the proceedings.

**IT IS SO ORDERED.**

*[Signature]*

Regina S. Edwards, Magistrate Judge
United States District Court

June 9, 2025

Copies:	Counsel of Record